NEWTON v. CONSOLIDATED CONSTRUCTION CO.

1. DAMAGES—BUILDING CONTRACTS—BREACH.

Where a portion of a building which defendant has contracted to construct is left undone, the measure of damages for failure to carry out the contract is the increased cost of completion; if the building is left uncompleted it is not material that its value for purposes of sale is not lessened because of the work being left incomplete; the owner is generally entitled to damages for the necessary expense to which he would be put to have the work done, and it is not necessary in order to recover that plaintiff should have actually completed the building.

2. SAME—EVIDENCE—INTENT.

Testimony of the owner tending to show that he intended

at some future time to construct or complete the building was immaterial but did not amount to reversible error, in an action for a breach of the building or construction contract.

3. SAME—EVIDENCE—HEARSAY.
    It was erroneous to admit in the evidence a notice from the building department of the municipality, as tending to prove the condition of the incomplete structure, but the error was not prejudicial where competent testimony covered the same subject and was substantially undisputed.

4. SAME—VALUE—OPINION TESTIMONY.
    Testimony, also, of a witness as to the value of the house and lot with the structure completed thereon according to specifications was not prejudicial to defendants, although he was not familiar with the cost of construction of the house and only knew about what contractors would ask for it and would agree to build it for.

5. TRIAL—CHARGE—JURY TRIAL.
    3 Comp. Laws, §§ 10243, 10246 (4 How. Stat. [2d Ed.] §§ 11837, 11840), providing that the circuit judge in charging the jury shall give his instructions in writing and read them to the jury and forbidding any oral qualification, is modified and is no longer in effect, by reason of the provisions of section 414, 1 Comp. Laws (4 How. Stat. [2d Ed.] § 11926), providing for the appointment of stenographers.

6. SAME—TRIAL—APPEAL AND ERROR—INSTRUCTIONS TO JURY.
    While it may be improper practice, in charging the jury, to state that the plaintiff or defendant requests the court to charge and to qualify and amend the requests, with or without argument, so that their effect is weakened or lost, it cannot be held that such action on the part of the trial court is prejudicial error, if the court states the rules of law which are applicable and covers the requests in such a way that the jury could not have been misled.

Error to Wayne; Hosmer, J.   Submitted November 4, 1914.   (Docket No. 135.)   Decided January 4, 1915.

Assumpsit by George Newton and another against the Consolidated Construction Company and Illinois

Surety Company upon a surety bond securing the performance of a construction contract. Judgment for plaintiffs. Defendant Illinois Surety Company brings error. Affirmed.

*Cullen, Casgrain & Wurzer,* for appellant.

*Campbell & Dewey,* for appellees.

The testimony tended to prove, among other things, that by written contract dated October 28, 1912, it was agreed that defendant Consolidated Construction Company, a Michigan corporation, should, between that date and the 31st of January, 1913, erect and complete for the plaintiffs a two-story frame building on premises described in the contract, according to plans and specifications, in a good, sufficient, and workmanlike manner, for the sum of $2,542, which sum the plaintiffs agreed to pay—$500 when the building was ready for the first floor joists, $500 when the roof was on, $500 when it was lathed and plastered, $500 when the interior finish was on, and $542 when the building was completed. The defendant Illinois Surety Company thereafter, and on November 8, 1912, joined with the Consolidated Construction Company in an undertaking to pay the plaintiffs $2,542. Said undertaking, referring to the said building contract, is conditioned that if the principal, the Consolidated Construction Company,

"shall well, truly, and faithfully comply with all the terms, covenants, and conditions of said contract on their part to be kept and performed according to its tenor (except as hereinafter provided), then this obligation to be null and void; otherwise to be and remain in full force and virtue in law."

It was provided in said last-mentioned undertaking, as conditions precedent to any right to recover thereon, among other things, that in the event of the

happening of any default by the principal the surety should have the right and privilege to assume the performance of the contract and to sublet or complete it, whichever it might elect to do, and, upon electing to assume performance, it should be subrogated to all the rights and properties of the principal arising out of the contract and to all moneys and properties at that time due and payable, including deferred payments, and to all payments thereafter becoming due and payable to the principal under and by virtue of the contract; that any suit or proceedings in equity to recover any claim against the surety must be commenced within six months after the first breach of the contract referred to herein; that "this bond shall not cover loss resulting from acts of God, war, riots, fire, the elements, or labor difficulties called strikes, nor reconstruction or repair made necessary by reason of any such causes."

The contracting company, the principal in this bond, entered upon the performance of its contract to erect the building, beginning work October 29, 1912, and proceeding therewith to some extent until about January 7, 1913. In a notice which, pursuant to the bond above referred to, plaintiff thereafter gave, the conditions of the building January 7, 1913, were stated to be:

"The basement is completed, outside of a few minor details; also the skeleton up and roof boards partly on."

The construction company offered testimony tending to prove that, in addition, the cellar windows were in position, the first floor joists were in, and the first or rough flooring laid thereon; that the contractor had also erected a temporary frame tool and supply shed on the lot and had caused to be delivered there by one C. W. Kotcher some lumber to be used and incorporated in the structure. February 17, 1913,

plaintiffs sent their affidavit to the surety company with a letter. On March 19, 1913, the structure, such as it was, was blown down by wind during a severe storm. Early in April the construction company again went upon the premises to resume work, and proceeded to take down and reconstruct that part of the building which had fallen as a result of the storm. After work had progressed for a day or two, plaintiff Newton and the president of the construction company met on the premises. What took place there is in dispute. The loose lumber on the premises had been taken away by the man who furnished it, and the construction company was by him refused further lumber to be used on the job. The construction company did no more work on the building. Thereafter Kotcher, or some one representing him, dismantled and took apart the lumber portion of the structure, including the tool and supply sheds, cellar windows and all other items of lumber, and removed them. On May 7, 1913, the surety company advised the plaintiffs that it elected not to take advantage of the right of subrogation. Neither the proposed structure nor any other structure has been erected on the lot. Plaintiffs never paid any money on account of the contract.

In a suit upon the bond, the trial court instructed the jury:

"In the event you are satisfied, as a matter of fact, that the defendant the Consolidated Construction Company abandoned the contract, then you will find for the plaintiffs and against the defendant damages which they have suffered, by reason of breach of contract according to the following rule: The measure of damages is the difference between the fair market price of the value of the work to be done and the materials to be furnished according to the plans and specifications put in evidence, within a reasonable time after the breach and after notice received by the plaintiffs from the Illinois Surety Company of their election

not to continue the work, and the contract price as agreed upon by the parties in their contract, which agreed price is the sum of $2,542.

"This right to recover on the part of the plaintiffs is, of course, based on your being satisfied, as a matter of fact, that the plaintiffs complied with the terms and conditions of the bond, which was signed by them and the Illinois Surety Company, and further upon the condition that you are satisfied, as a matter of fact, that the failure to complete the contract was due to the defendant the Consolidated Construction Company, and was not the fault of the plaintiffs herein. * * *

"I am asked to charge you, if you find that the plaintiffs had abandoned the contract with the Consolidated Construction Company, and had abandoned the project to complete said contract, or to have any one else for them complete said contract, substantially as is outlined and defined in the contract, plans, and specifications, and they paid out nothing to the defendants or for the use of the defendants under said contract, then you should find for the defendant the Illinois Surety Company, and that the plaintiffs have no cause of action. Gentlemen, I think that is so. You have heard the testimony of the plaintiffs in this case that they intended to go on and build the house. If from the evidence, gentlemen, introduced, and under the testimony in this case, you have reached the conclusion that that testimony is not true, then, of course, they have no cause of action. But that does not necessarily follow from the mere fact that nothing has been done to the present time, that they did not intend to go on, and at the same time when they shall be able to complete the house."

The plaintiffs having recovered a judgment for $1,000, the defendant surety company alone prosecutes the writ of error. The errors alleged, assigned, and relied upon present propositions which it states as follows:

"The measure of damages assumed and adopted by the court throughout the trial—that is, the difference between the contract price and the market price of the contemplated structure on May 11, 1913—not-

withstanding that plaintiffs did not build, did not relet the work, and did not expend a dollar, is erroneous.

"This measure of damages is erroneous because damages measured by this rule are too remote, contingent, and indefinite; breach of contract damages are allowed only to compensate *pro tanto* for real and actual loss, not for feigned or fictitious loss."

"Letting stand the evidence of Newton why he did not build his house, because it is irrelevant, and it is hearsay."

"Receiving in evidence Exhibit 6. It is hearsay, collateral, irrelevant, and incompetent."

"The court erred in receiving, and then failing to strike out, testimony of Martin Featherstone as to value of contemplated building, with specifications and blueprints as a basis, because he was not qualified, not being a builder, but only a real estate agent, his evidence is incompetent."

"The court erred: (*a*) In not settling and reducing its charge to writing; (*b*) in not reading the charge; (*c*) in failing to write the words 'Refused' and 'Given' opposite requests; and (*d*) in orally qualifying defendant's requests—because the statute strictly enjoins all these things, and defendant specially requested a strict compliance thereto. Section 414, 1 Comp. Laws, which would seem to avoid or repeal sections 10243-10246, is unconstitutional."

"It was prejudicial error for the court to prefix the words 'I am asked to charge you' to various paragraphs of its charge taken from defendant's requests, and concluding with the remark that the lengthy charge was given only because requested, leaving the inference that it was all unnecessary and meaningless."

"The court erred in modifying defendant's requests 7 and 8 as to clause exempting the surety from losses due to the elements, and charging argumentatively thereon, and unnecessarily repeating the same."

"Requests 18 and 19, as to removal of lumber in the structure with knowledge, consent, or acquiescence of plaintiff, should have been given just as presented, and it was error to modify them, as was done with statements relating to loose lumber on the

ground which were inapplicable and consequently misleading."

· "The modification of defendant's request No. 22 by an improper and argumentative statement of inferences that may or may not be drawn from the evidence, and undue emphasis given plaintiff's evidence. It invades the province of the jury."

OSTRANDER, J. (*after stating the facts*). 1. Performance of the building contract would have given to the plaintiffs the structure called for, and would have cost them the contract price. Owing to the default of the contractor, there is no building, plaintiffs have paid no money, and it appears to be conceded that there are no attaching liabilities by way of liens or otherwise. It would seem reasonable that plaintiffs should have the advantage of their bargain, whether they ever get the house or not.

"The measure of damages for the failure of a contractor to construct a building is the reasonable cost of having the building constructed by another contractor less the contract price. Where a certain portion of the building is left undone the same rule applies; that is, the increased cost of completion is the measure of damages for failure to complete. * * * If the building is left incompleted, it is immaterial that in its incomplete condition its value for purposes of sale is not lessened by reason of the work left undone; so, where the owner of a house which the defendant had failed to complete sold it in the condition in which the defendant left it, and there was no evidence that the price he received was less than he would have received if the defendant's contract had been fully performed, he nevertheless was entitled to recover the cost of completing according to the contract." 2 Sedgwick on Damages (9th Ed.), § 643.

"In such cases the employer is generally entitled to measure his damages by what the necessary expense would be to procure to be done the work which the contractor neglected to do, whether it is done or not; for the same reason that a vendee in an executory contract for the sale of goods need not, in fact, pur-

chase the goods he was entitled to receive from the vendor in order to have his damages computed on the basis of what they would cost him at the time of the breach." 3 Sutherland on Damages (3d Ed.), § 699.

Both text-writers refer to decisions supporting the rules stated in the text. In *King* v. *Nichols & Shepard Co.*, 53 Minn. 453, 455 (55 N. W. 604), it is said:

"Upon such a contract as this, to wit, to put the machine in good repair and condition, it was not necessary that, in order to recover, plaintiff should himself put it in that condition. As soon as defendant failed to do what it agreed to do, plaintiff might recover the reasonably necessary cost of doing it."

Where the employer had taken possession of an uncompleted building, and the contractor sued him, it was held that:

"Where a contract is nonapportionable, as this one is, and the plaintiff does not complete, as this plaintiff did not, his recovery must be upon the *quantum meruit*. His measure of damages would be the reasonable value of the building as defendant took possession of it, not exceeding the contract price and the value of the extras, less what it would reasonably cost to complete it and make it comply with the contract and specifications." *Germain* v. *School District*, 158 Mich. 214, 218 (122 N. W. 524, 526).

There are no opposed opinions upon the proposition that a defaulting contractor must respond in damages, although some judges have apparently had difficulty in formulating a rule governing the extent of liability in cases where the work is not completed. This apparent difficulty arises upon some notion of the remote, uncertain, or speculative character of the damages sought to be recovered. In *Lamoreaux* v. *Rolfe*, 36 N. H. 33, a case cited by appellant, the contract, which one of the parties wholly refused to perform, was after breach relet to another, for an amount stated, but was never carried out. In a suit

against the first contractor, this price agreed to be paid the second and subsequent contractor was relied upon as evidence of the damages plaintiff had sustained. It was held that, the defendant having absolutely refused to perform the contract, there was no reason why the plaintiff should wait any length of time before prosecuting for the damages, but that the price fixed in the subsequent contract, it never having been performed, was not evidence of the damages sustained. If it were otherwise, it was said, the plaintiff might by arrangement offer to pay, and the subsequent contractors offer to accept, any sum, with no intention of carrying out the contract. See, also, *Bertram* v. *Bergquist*, 153 Ill. App. 43. Reason and the weight of authority sustain the propositions, *first*, that plaintiffs are entitled to the benefit of their bargain, whether they do or do not build the house, and *second*, that the rule for determining the benefit was correctly laid down by the trial court.

It follows that the testimony of Newton concerning an intention to build at some time was, if wholly immaterial, not prejudicial to the defendants.

2. It was error to admit the notice of the building department as evidence of the condition of the structure at a particular time. It was hearsay. The error was not prejudicial, because other competent testimony covered the same subject and is practically undisputed. Besides, the objection now made is not the one made upon the trial.

3. With respect to the testimonial qualifications of the witness Featherstone, it should be said that he gave no opinion of damages within the rule of damages given to the jury. As to what the house and lot would have been worth with the house completed according to specifications, he appeared to be competent to give, and did give, his opinion. He was competent also, apparently, to place a value upon the vacant

lot. But as to the value of the completed house, he stated that he knew only what, or about what, contractors would ask for it, or would agree to build it for. While I think the testimony was of little probative value as affecting the real issue, and that no error would have been committed in striking it out, it may be safely said that it did defendants no harm.

4. 1 Comp. Laws, § 414 (4 How. Stat. [2d Ed.] § 11926), provides that:

"In cases tried in the circuit court in which such stenographers shall be engaged, sections one and four of an act entitled 'An act to declare and establish the practice of charging or instructing juries, and in settling the law in cases tried in the circuit court,' approved March twenty-sixth, eighteen hundred and sixty-nine, shall not apply."

Said section 414 is the concluding one of an act entitled:

"An act to provide for the appointment and to fix the term of office, duties and compensation of circuit court stenographers in the State of Michigan"—being Act No. 183, Pub. Acts 1897.

The act of 1869, to which section 414 refers, is Act No. 67, entitled:

"An act to declare and establish the practice in charging or instructing juries, and in settling the law in cases tried in circuit courts."

It is to be found in 3 Comp. Laws, §§ 10243-10246 (4 How. Stat. [2d Ed.] §§ 11837-11840). The first and last sections (1 and 4) read:

"Section 1. The people of the State of Michigan enact: That hereafter in all civil and criminal cases at law, circuit courts, in charging or instructing juries, shall charge or instruct them only as to the law of the case; and such charge or instruction shall be in writing, and may be given by the court of its own motion."

"Sec. 4. The instructions or law so settled by the

court in writing, either upon its own motion or upon the application of the respective parties, shall be read to the jury, filed in and be a part of the record of the case, and the court shall in no case orally qualify, modify, or in any manner explain the same to the jury."

The legislature of 1869 passed also Act No. 92, entitled:

"An act to provide for the appointment of a stenographer for the circuit court for the county of Wayne, and other counties in this State, and to limit the operation of sections one and four of an act"—referring to Act No. 67.

This act may be found in 2 Comp. Laws of 1871, §§ 5027-5035, as amended by the Laws of 1871, Act No. 82, and in sections 6503 *et seq.*, 1 How. Stat. (1st Ed.). It does not appear in the compilation of 1897. Its constitutionality was considered by this court in *Sheahan* v. *Barry*, 27 Mich. 217, 224; it being there contended that it embraced more than one object. It was held that Act No. 92 of 1869 was valid and effectual to relieve judges of the Wayne circuit court from the operation of section 1 of the act. It will be noticed that the title is broader than that of the act we now are considering, and that the court was of opinion that no duplicity was indicated in the title.

If the point now urged was for the first time presented to the court, some difficulty might be met with in holding that 3 Comp. Laws, §§ 10243-10246, were not binding upon all circuit courts. So late as the decision in *Simons* v. *Haberkorn*, 139 Mich. 130, 132 (102 N. W. 659, 660), it was said, generally, that these sections "declare and establish the practice in charging or instructing juries." Of course, the question we are considering was not there involved. In *People* v. *Quimby*, 134 Mich. 625, 635 (96 N. W. 1061) the same justice who delivered the opinion in *Simons* v. *Haberkorn* said that a reference to the note under

section 10246, 3 Comp. Laws, will show its provisions are not applicable where a stenographer is employed. In that case counsel was contending that his requests to charge, if they correctly stated the applicable law, should have been given as prepared by him. This right the court denied. In *People* v. *Smith,* 177 Mich. 358, 360, 361 (143 N. W. 12), an assignment of error was based upon the fact that the trial judge marked requests of counsel, "Refused, except as covered in the general charge," instead of marking each as "Given" or "Refused." It was said:

> "We think what was done a sufficient compliance with the statute, in view of the fact that error may now be assigned upon the charge or refusal to charge, without the necessity of taking an exception."

But in view of the decision in *Sheahan* v. *Barry, supra,* which was rendered in 1873, and the practice which has since then obtained in the circuit courts to disregard the provisions of sections 10243 and 10246, we are of opinion that the questions presented should be answered against the contention of appellant. If, however, the practice which the statute imposes was followed generally by the courts, there would be presented to this court fewer complaints of the nature of those hereinafter considered.

5. It is an exasperating thing, one which most trial lawyers have at some time had occasion to complain about, to have the trial judge say to the jury, "I am requested to charge you," proceed to read a request, and end by so qualifying or amending it, with or without argument, that its force as a declaration of the applicable law is weakened or wholly lost. The jury will usually understand by whom the request is preferred, and if several requests preferred by the same party suffer this fate, especially if they are contrasted with an unqualified, connected statement of rules favorable to the other party, dissatisfaction

with an adverse verdict is to be expected. It is not that trial judges intend to be unfair, or intentionally depreciate the requests preferred by either party, though unfairness is often charged by the defeated suitor, but it is because, in the hurry of trials, no other course seems open to the effort to give so much of the requested law as seems to the judge to be applicable, while refusing so much as is thought to be inapplicable or wholly wrong. It is against the supposed evils which may result from the delivery of qualified instructions, explained, or attempted to be, by argument on the part of the judge, that the statute, and especially the sections held to have been made inoperative by the later legislation, seems to be aimed. Very often counsel are partly or wholly to be blamed for presenting requests so worded as to present contradictions and applicable and inapplicable rules of law in the same request, or requests so numerous that the court can do no more than hurriedly examine them.

In the case at bar counsel for appellant say that at least 11 times, in giving and while reading from requests preferred by them, the court preceded the reading by the words, "I am asked to charge you," that in one or more of these instances these words were followed by, "And I charge you," which were omitted in other instances, emphasizing, it is claimed, those portions of the charge so designated, and in concluding the charge said:

"I have perhaps given a longer charge than I otherwise should, but the Supreme Court have said, so far as possible, the court should give the requests to charge in the language in which the counsel have written them, and for that reason, perhaps, I have given a longer charge than I otherwise would."

Complaint is made also that the court, prefacing a request as above indicated, after reading it, said, in

words or substance, "Now, doubtless that is so, but," etc., or, "Undoubtedly that may be so, but," etc.

Particular portions of the charge are called to attention in the brief for appellant showing claimed argumentative qualifications and modifications of requests, in which it is said inferences which were for the jury alone were drawn by the court. I shall not set out the requests or the charge as given. Some argument was indulged in by the court, and, if the statute which has been referred to were controlling, a reversal of the judgment would be inevitable. I have applied to the charge the test of repeated careful readings of it, and am impressed that the jury could not have misunderstood the court, that no improper rules were laid down, and, in the absence of a controlling statute, think that no reversible error is made to appear.

The judgment is affirmed.

BROOKE, C. J., and MCALVAY, KUHN, STONE, BIRD, MOORE, and STEERE, JJ., concurred.