JOHN F. HOGAN, APPELLANT, *v.* JAMES SHIELDS, RESPONDENT.

[Submitted Feb. 2, 1898.   Decided Feb. 14, 1898.]

*Building   Contract—Award—Bond   of   Contractor.*

ONE to whom a building contract has been awarded, it being understood that a written contract was to be executed by the parties and that the contractor was to give a sufficient bond for the performance of the contract, cannot maintain an action for the breach of contract when he has refused to furnish the bond required.

*Appeal from District Court, Silver Bow County.   T heodore Brantly, Judge.*

ACTION by John F. Hogan against James Shields for breach of contract.   Judgment of nonsuit.   Plaintiff appeals.   Affirmed.

Statement of the case by the justice delivering the opinion.

This is an action for breach of contract.   The complaint in substance alleges that the plaintiff and the defendant on or about the 3d day of June, 1895, entered into a contract by which the defendant employed plaintiff to construct a brick building in the town of Anaconda, for the construction of which the plaintiff alleges the defendant agreed to pay him the sum of $11,400.

It appears from the record that the defendant had published a notice in the Anaconda Standard that he would receive proposals or bids for the construction of said building until 6 o'clock p. m., May 30, 1895.   The plaintiff alleges that he was a bidder for the construction of such building under such advertisement, and that his bid was the lowest; and that, he being the lowest bidder, defendant awarded to him the contract for the erection of said building,   but that thereafter the defendant refused to carry out the contract entered into with plaintiff for the building of such structure, to the plaintiff's damage in the sum of $500, expended in making preparations

to build said building, and to the further damage of $2,500 as profits, which the plaintiff alleges he could have made out of the contract to construct the same.

The answer denies the allegations of the complaint. The case was tried to a jury, and, at the close of the testimony of the plaintiff, the defendant moved the court to grant a nonsuit, upon the ground that the plaintiff's evidence failed to show that the contract set up in the complaint was ever entered into between plaintiff and defendant, or that defendant ever entered into any contract with the plaintiff for the construction of the building, as alleged in the complaint. This motion was granted, and judgment entered against the plaintiff in favor of defendant for costs. From this judgment and the action of the court in directing a nonsuit, the plaintiff appeals.

*Carroll & Leehey,* for Appellant.

The errors upon which appellant relies are three. First, the court excluded certain testimony offered by plaintiff tending to show that at the time the bid was made plaintiff had some reason to believe that defendant would give preference to a certain other bidder. Second, the court excluded testimony offered by plaintiff to the effect "that an examination of the plans and specifications revealed to him the necessity of doing extra work; that by the usages and customs and the contract, that extra work would go to the contractor; and from that source, as a part of the probable profits of this contract, plaintiff expected to realize about $1,000, more or less, probable profits." The other error specified is the court's ruling sustaining defendant's motion for a nonsuit.

Upon the first point, we think it was material to show in defendant a motive for favoring a certain bidder, and such testimony should have gone to the jury, that, in the light of all the circumstances, they might determine whether defendant was or was not justified in his treatment of plaintiff after plaintiff's bid had been accepted. We also think it proper to show that plaintiff relied upon the extra work, and that by the customs and usages of the place, and by the contract

awarded to him, he was entitled to do so. If his testimony showed only a speculative or possible source of profit from the extra work, it would have been proper then to instruct the jury that a recovery could not be had upon such, but the jury were to determine questions of fact, and whether this was or was not a likely source of revenue or profit to plaintiff was certainly a question of fact and should have been so determined. Upon the third point we think the court erred because the testimony showed that the offer for bids was made by defendant upon the plans and specifications, without any further reservation or limitation; that plaintiff's bid was the lowest; and the contract had been actually awarded to him (transcript, pages 10-12.) We assert as fundamental and established principles that (1) where, in response to a simple, unqualified request for the same, bids are made, the lowest bidder has an absolute right to have the contract awarded to him, upon compliance with the conditions of the offer, unless some substantial and valid objection intervene, and no objection that is not *bona fide* and reasonable can be interposed; and further, (2) that the acceptance of a bid and the award of the contract in accordance therewith, however informal, is of itself a contract and binds both parties, even though they meant subsequently to enter into some more formal written agreement. The testimony in this case shows that plaintiff's bid was the lowest, and that no valid objection to it or to the sureties offered by him on the bond was raised. Hence he was entitled to the contract according to the principle first stated. But not only that; the testimony also shows that the contract had been actually awarded to plaintiff. Then, by the second principle stated, the contract was complete and both parties bound, even if its terms were yet to be reduced to writing and signed. Appellant is not compelled, in order to prevail, to rely upon the first principle, but if he were he should nevertheless prevail, for the question as to whether his bid was the lowest and whether any substantial or reasonable excuse existed for the refusal of defendant, were questions of fact for the jury and the motion for a nonsuit should have

been overruled. In support of the first stated principle we cite : Clark on Contracts, Section 28; *Walsh* v. *St. Louis Exp. Assn.*, 16 Mo. App., 502; 2 S. W. 842; *People* v. *Campbell*, 72 N. Y., App. 496. In the same connection, that no objection that is not *bona fide*, and reasonable can be interposed, and that technical and capricious objections will not be allowed, we cite : *State* v. *Commissioners*, 29 O. St., 138; *People* v. *Contracting Board*, 46 Barb., 254; *People* v. *Contracting Board*, 27 N. Y. App., 378; *Talbot Paving Co.* v. *Common Council*, 51 N. W., 933; Lloyd on Buildings, Section 22; *Logan* v. *Berkshire*, 18 N. Y. Sup., 161; *Boiler Co.* v. *Garden*, 101 N. Y. App. 387; 4 N. E., 749; *Hawkins* v. *Graham*, 149 Mass., 284; 21 N. E. 312. In support of the second principle stated we cite : Hudson on Building Contracts, p. 114; *Commissioners* v. *Rhoades*, 26 O. St., 411; Parsons on Contracts, Fifth Ed., p. 500; citing also *Walsh* v. *School District No. 1*, 17 Montana, 413, 43 Pac. 180.

*T. O'Leary*, Attorney for Respondent.

The first and second assignments of error relate to the exclusion of evidence from the jury, and in no way effect the question of the granting of the nonsuit whereby the court withdrew the entire case from the jury. We believe the evidence was properly excluded, but its exclusion could in no way prejudice the plaintiff in view of the result of the trial. The motion for a nonsuit was properly sustained. The plaintiff's own evidence shows that the contract alleged in the complaint was never entered into between the plaintiff and defendant. Although it was stated he was the lowest bidder, the job was not his until he had complied with what they wanted, the bond. Plaintiff's statement to O'Rourke shows this, wherein he says : "He could get a contract from Shields to build a house provided he could get a good bond." The proposal or bid of the appellant was not assented to by the respondent—to the same thing, and in the same sense, hence there was no contract upon which to base an action for its breach. (1 Parsons on Contracts, 475.) The contract was

to be reduced to writing, and had been prepared, and appellant asked to get his bond and sign the contract (transcript p. 11).     Not having been signed, there was no contract.     (*Mississippi and Dominion Steamship Co.* v. *Swift*, 56 Me. 248, S. C. 41 Am. Rep. 545; *Congdon* v. *Dacy*, 46 Vt. 478; *Morrill* v. *Tehama*, *M. & M.*, 10 Nev., 135; *Methudy* v. *Ross*, 10 Mo. App., 106; *Eads* v. *Carondelet*, 42 Mo., 113; *Green* v. *Cole*, 103 Mo., 70; *Hodges* v. *Sublet*, 91 Ala., 588; *Allen* v. *Choteau*, 102 Mo., 369.)

PEMBERTON, C. J.—The only material question raised by this appeal is as to whether the court erred in directing a nonsuit against the plaintiff.

The appellant contends that there was evidence tending to show the existence of the contract set out in the complaint, and that it was therefore error on the part of the court to direct a nonsuit, as has been uniformly held in this jurisdiction.

In order to determine whether there was in fact any contract entered into between the parties for the construction of the building mentioned, we must first ascertain what the plaintiff had to do in order to have the contract awarded to him.     It is very evident that both parties understood that the signing of a written contract, and the entering into a sufficient bond by plaintiff for the performance of the contract according to the plans and specifications prepared by the architect of the building, were prerequisites to the final awarding of the building contract to plaintiff by the defendant.     The plaintiff admits this in his testimony.     It is not contended that the defendant did not so understand it.     The contract, under this understanding of the parties, could not have been completed or finally entered into without executing such written contract and bond by plaintiff.     The bid for the contract, the awarding of it to plaintiff as the lowest bidder, the execution of the written contract to construct the building according to the plans and specifications thereof, and the giving of the bond for the faithful performance of the contract, were all parts of one transaction, and were all necessary to be done by the party upon

whom the doing of such acts devolved before it could at all be claimed that any contract had been entered into between the parties for the constuction of the building. (*Watson* v. *O'Neil*, 14 Mont. 197, 35 Pac. 1064.)

It cannot be contended that the defendant ever understood, or could have understood, that he let the contract to plaintiff to construct the building simply because plaintiff's bid was the lowest. Both parties understood that other things were to be done in order to complete the contract. The plaintiff himself testifies, in substance, that the defendant was urgent in relation to having him give the bond at once, but that he was delayed in getting a particular bondsman; that, when he was requested to get other bondsmen, he refused to do so, and said to the defendant that if he would not wait a few days for the return of the man he wanted for a bondsman, he would go no further in endeavoring to get a bond; and it is clear that thereafter the plaintiff abandoned all efforts to get a bond. The plaintiff having refused according to his own evidence to execute and deliver to defendant a good bond, as he knew he was required to do in order to complete the contract for the construction of the building, we think the evidence utterly fails to show, or even tends to show, that the contract sued on, or any contract for the construction of the building mentioned, was ever entered into between the parties.

The evidence, we think, positively shows that there never was such a contract, or any contract, entered into between the parties for the construction of the building. There was no error in the action of the court in directing a nonsuit.

The judgment appealed from is affirmed.

*Affirmed.*

PIGOTT, J., concurs.  HUNT, J., not sitting.