154 So. 571

## HANCOCK et al. v. OLIVER et al.
### 1 Div. 808.

Supreme Court of Alabama.
May 10, 1934.

Lyons, Chamberlain & Courtney, of Mobile, for appellants.

550

Mahorner & Mahorner, of Mobile, for appellees.

GARDNER, Justice.

The suit is for the recovery of damages for breach of contract for the construction of a bridge at Herron Bay Marsh, Mobile county. The cause was tried before the court without a jury, and judgment rendered for plaintiffs, from which defendants prosecute this appeal.

Plaintiffs compose the firm of Bay Construction Company, and defendants that of Hancock Company, and will be hereinafter so designated.

The Hancock Company had been awarded the contract for certain road construction work known as county improvement No. 23–A and B, Cedar Point road extension, involving many plans and specifications and a considerable sum of money. These plans called for the construction of a bridge at Herŕon Bay Marsh, of a more oŕ less temporary character. The construction of this bridge was sublet to Bay Construction Company by Hancock Company for the sum of $3,850, under contract of November 24, 1930, duly executed by the parties. The Hancock Company, however, subsequently let another build the bridge, and hence this suit for breach of contract.

For defense of the suit, the Hancock Company rested in the main upon the theory that plaintiffs were required under their contract to execute a bond as a condition precedent to the effectuation of the contract, and, as no bond had been executed, there was in fact no contract. In support of this theory of the case, counsel cite, among other authorities, Metropolitan Life Ins. Co. v. Goodman, 10 Ala. App. 446, 65 So. 449; Redman v. Ætna Ins. Co., 49 Wis. 431, 4 N. W. 591; Floyd v. Pugh, 201 Ala. 29, 77 So. 323; Hogan v. Shields, 20 Mont. 438, 52 P. 55; Symms-Powers Co. v. Kennedy, 33 S. D. 355, 146 N. W. 570; Flynn v. Dougherty, 3 Cal. Unrep. 412, 26 P. 831, each of which has been carefully considered.

But we are not persuaded this theory can be sustained under the contract here involved. Among other stipulations of the contract between these parties, and along with that for workmen's compensation insurance, is a provision for the execution of a bond "for the faithful performance of said contract in an amount equal to the contract price." What is a condition precedent depends, not upon technical words, but upon the plain intent of the parties. Floyd v. Pugh, supra; 12 C. J. 408. There is nothing in the language of this contract indicating any intention of the parties that the contract, which was duly signed by the parties, should not become effective as such until the bond was made, but the

stipulation was merely one for the better protection of the Hancock Company, and rises to no higher dignity than the provision immediately following for the procuring of workmen's compensation insurance, also intended for Hancock Company's better protection. Immediately following this paragraph of the contract is the provision for payment of the contract price "when and as the party of the first part is paid for said work by the Board of Revenue and Road Commissioners of Mobile County, Alabama," and the party of the second part agreed to complete the work "within two months from the time when said party of the second part shall be ordered by the party of the first part to start said work."

Undisputedly there was no demand or order to start the work on the bridge, though clearly the language of the contract contemplated that the Bay Construction Company should begin work only at a time designated by the Hancock Company. The contract of Hancock Company with Mobile county discloses that the work on this project was not to begin until the approval of the sale of the bonds, and the proof shows there was considerable delay on this account, and that in fact this temporary bridge was not completed until more than a year after the execution of the contract, the breach of which is the foundation of this suit.

It was not intended by the parties that during this waiting period the Bay Construction Company must incur the expense of a bond, though the work was not ready to be begun and no notice to begin the work had been given. Upon notice to begin the work, defendants could of right demand the bond, and a failure or refusal on plaintiffs' part would constitute just cause for a rescission of the contract. But to demand a bond before the time for the work to begin or before any notice to that effect, would be premature and ineffective so far as the rights of the parties to the contract were concerned. The provision for the execution of a bond in the contract here considered cannot be construed as a condition precedent to the effectiveness of the contract. National Surety Co. v. City of Huntsville, 192 Ala. 82, 68 So. 373; 12 C. J. 408; Underhill v. Saratoga & W. R. Co., 20 Barb. (N. Y.) 455.

▮ The contract here in question makes reference to the contract existing between the Hancock Company and Mobile County, plaintiffs agreeing to construct the bridge according to the specifications outlined therein, and this latter contract is made a part thereof. It is clear the reference to the Mobile county contract with Hancock Company was for a limited purpose only, that is, as to the construction of the bridge which was sublet to the Bay Construction Company, and that contract therefore became a part of this for such limited purpose only. 13 C. J. 530. The Mobile county contract with Hancock Company involved large expenditures for road construction, with which this contract was not at all concerned, and the construction of this bridge formed but a minor part of the whole project. The bond required of the Hancock Company under the contract with the county was $160,000, and it was provided, among the specifications and proposals therefor, that a "failure to execute a contract and file an acceptable bond as provided herein within fifteen days from date of award shall be just cause for the annulment of the award."

The contract between plaintiffs and defendants contains no such stipulations, and it needs no argument to demonstrate that the reference in this contract to that of Hancock Company and Mobile county was limited to that part bearing upon the bridge construction, and did not embrace the above-noted stipulation as to the execution of a bond, which matter was otherwise treated in this particular contract. The reference therefore to the Mobile county contract was for a limited purpose only, and bore no relation to the matter of the bond.

But we forego further discussion. We are at the conclusion that no duty rested upon plaintiffs to execute a bond until notified when to begin work, and, no notice being given, there was no default on their part in that regard. 13 C. J. 567.

It may be further observed, however, that the contract provided that, if plaintiffs failed or refused to do the work as agreed, defendants might do so upon giving five days' written notice.

It is without dispute defendants had the bridge constructed by some one else without notice to plaintiffs, and no notice as above provided was ever given. Hancock, testifying for defendants, does say he requested a bond, and Oliver, for plaintiffs, says it was understood with Hancock no bond was to be executed until notified when the work was to begin. We have disclosed our view that this latter testimony is in accord with the true meaning of the contract. And, as it is not contended by defendants any notice to begin work was ever given, the conflict in the testimony, as above noted, presents no matter of importance upon the result.

N. P. Oliver, it sufficiently appears, was an active member of the firm of Bay Construction Company, and familiar with its business. The contract in question was executed by him for the partnership, and he testified as to the value of the firm's assets and contracts, other than the one here in question, entered into by the firm with the amounts involved. The court permitted Oliver as a witness for plaintiffs to testify that the firm was ready, willing, and able to make the bond, and that in fact on December 30th, following this contract of November 24th the firm had made a bond for $40,000 on a contract, and permitted plaintiffs to show by one Towle, the bond agent, that he would have made the bond for the firm.

We find no reversible error in these rulings. The evidence was admissible as a collective fact and not objectionable as the statement of a mere conclusion. Farmers' Cotton Oil & Trading Co. v. L. W. Ward & Son, 170 Ala. 491, 54 So. 513; 22 C. J. 535. And, indeed, it would appear as the only practical way in which the matter could well be established as a fact. So, likewise, as to the financial condition of the partnership, and that the firm had experienced no refusal in the execution of any bond required in its contracts during this time.

Moreover, we have heretofore noted the fact that under the contract the execution of the bond was a matter that could well wait for the notice on defendants' part to start the work, which notice was never given. Nor is there any denial that plaintiffs were ready, able, and willing to carry out the contract for the construction of the bridge, and that defendants gave the work to others without notice to plaintiffs and without an opportunity on their part to perform the contract. It would seem, therefore, that plaintiffs were excused from first offering proof of readiness to perform (13 Corpus Juris, 764), and that in no event could these rulings be prejudicial.

The principal element of damage suffered by plaintiffs was the loss of profits as disclosed by proof of the difference in the reasonable cost of building the bridge and the contract price. Witness M. N. Oliver, a member of the firm of Bay Construction Company, who "did the figuring on the plans and specifications submitted by Mr. Askew for this bridge job," made a memorandum at the time of making the bid, and testified from a copy that the cost of labor and material for this bridge amounted to $2,024.10, and that these figures represented the fair market value at the time. Askew was engineer for Mobile county, and had drawn the plans, and the bridge built according to these plans was accepted by Mobile county. The bridge as finally constructed varied slightly from these plans, but the proof was to the effect that it made little difference in the cost, and that, in fact, as finally completed, the bridge was some cheaper than the original plan.

The objections of defendants to the questions elicited as to this proof were that it was "an attempt to prove the loss of property, and an attempt to prove speculative damages, which damages are not specifically claimed * * * on the further ground it had not been shown that the Askew contract or plan was adopted and used by Mobile County." We think it clear this evidence was not subject to the objection interposed thereto.

It is argued by counsel that the memorandum offered in evidence was a copy of the memorandum made by the witness, and the original was unaccounted for. True, the witness did say it was a copy of the memorandum he made at the time, but placed in form so as to be intelligible to others than himself. And when the objections were made they did not embrace this ground, and the attention of the court was therefore not directed thereto. The specific objections interposed were without merit, and this latter objection, now suggested, can avail defendants nothing.

Four witnesses testified to the reasonable cost of the bridge, and differed in regard thereto.

Counsel for appellants have indulged in some speculation as to the manner in which the trial judge reached the amount awarded plaintiffs in the judgment rendered, and insist the finding is subject to the condemnation of a quotient verdict. In the first place, we do not consider enough here appears to establish any presumption of a quotient verdict. Birmingham R., L. & P. Co. v. Moore, 148 Ala. 115, 42 So. 1024; George's Restaurant v. Dukes, 216 Ala. 239, 113 So. 53; Ewart v. Cunningham, 219 Ala. 399, 122 So. 359; St. Louis-S. F. R. Co. v. Swaney, 216 Ala. 454, 113 So. 410; Southern Ry. Co. v. Williams, 113 Ala. 620, 21 So. 328.

But, this aside, we think the reasoning as to quotient verdicts and the definitions found in the above authorities (see, also, 40 Cyc. 189) suffice to show the rule has no application to the judgment rendered by the trial judge without a jury. "In the absence of a statute to the contrary, a verdict is a decision by a jury, and a finding by a judge is

not a verdict, but can only be expressed by an order or judgment." 64 C. J. 1053.

The trial judge in the instant case evidently weighed the evidence of all four of the witnesses, consisting largely of their opinions, and was not bound to accept the exact estimate of any. His conclusion is sustained by the decided weight of the evidence, and we find nothing therein either as to the matter of liability or amount awarded that is subject to adverse criticism.

We discover no reversible error. Let the judgment be affirmed.

Affirmed.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.