# National Surety Company *v.* City of Huntsville.

### *Assumpsit.*

(Decided April 15, 1915. 68 South. 373.)

1. *Municipal Corporations; Contracts; Bonds; Construction.—* Where a paving contract required the contractor to maintain the pavement in proper repair for five years and to deliver it in good condition at the end of that time, and also provided that the city engineer or street superintendent should be the sole judge of when the pavement needed repairs; and that if the contractor should fail to make such repairs, or at the beginning should fail to complete them in a satisfactory manner, then the city should be authorized to make the repairs itself, or contract for them, and the contractor should, within ten days after receiving a certificate of the amount of damages, signed by the agent of the city, pay the sum claimed, and providing also that the contractor should not question the necessity for such repairs or the repair work, and the performance of the contract was secured by a bond, and the paving company breached its agreement. the city might recover damages without making the repairs itself, since the word "authorized" used in the contract means "possessed or endowed with authority," and is not equivalent to "required;' hence, the making of repairs by the city itself was not a condition precedent, which is the performance of some act or the happening of some event after the terms of the contract have been agreed on, and before it has taken effect, that had to be performed before recovery.

2. *Same; Bonds; Recovery.—*In such case, the bond which was for the faithful performance of a contract was not merely one of indemnity, as the obvious intention of the parties was to secure the performance of the contract.

APPEAL from Madison Law and Equity Court.

Heard before Hon. JAMES H. BALLENTINE.

Action by the City of Huntsville against the National Surety Company, for breach of the condition of a bond. Judgment for plaintiff, and defendant appeals. Affirmed.

SPRAGINS & SPEAKE, for appellant.

S. S. PLEASANTS, DAVID A. GRAYSON, and R. E. SMITH, for appellee.

GARDNER, J.—The city of Huntsville, on March 24, 1909, entered into a contract with the Mineral Rubber Paving Company for paving a certain street in said city, in accordance with an ordinance of date December 3, 1908. On the same day, March 24, 1909, the said paving company (so designated for convenience) and the city of Huntsville entered into another contract in writing, wherein said paving company agreed to keep in repair the street to be paved by it for a period of five years, some of the provisions of which contract will hereinafter appear. As a part of the contract it was provided that the paving company should execute a bond in penal sum of $10,000 "for the faithful performance of the contract and the making of the repairs as herein stipulated, with good and sufficient surety," etc., which bond should be considered as a part of said contract. On the same day, and in accordance with the above stipulation, said paving company and the National Surety Company (appellant) executed such bond, payable to the city of Huntsville, to secure the faithful performance of said contract to repair. The paving company, it seems, breached its contract by failing to repair said street as agreed, etc., and due demand was made upon it, due notice given, and the city of Huntsville then brings this suit against appellant as surety on said bond, resulting in a judgment for the city in the sum of $10,000.

(1) The evidence as to the breach of the contract by the paving company and the cost of repair of the street is without conflict, and the only question upon this ap-

peal relates to a construction of the contract between the parties, and of the bond. The repair of the paved street had not been made by either the paving company or the city, or any one else. In the original brief filed by counsel for appellant the insistence was that under a proper construction of the contract the duty first rested upon the city to make the repairs, and that this was a condition precedent to a recovery upon the bond. We cannot agree. In the first clause of said contract, after referring to the first contract relating to the pavement, it is recited, among other things, that the paving company agrees to "maintain and make all proper repairs of said pavement for a period of five years, beginning at the date when said pavement under said contract is accepted."

In the second clause it is recited that the "party of the second part [the paving company] agrees and contracts to keep the pavement which it shall lay on said Clinton street under said contract in proper repair for a period of five years, beginning from the date the pavement is accepted by the party of the first part, at and for a yearly price of one cent per square yard, payable yearly."

In the third clause of said contract, the paving company "agrees   *   *   *   and binds itself to maintain and keep in good repair the asphalt pavement herein provided for, for a period of five years," and then follow provisions as to what the condition of the pavement shall be at the end of the five-year period, to be judged of by the city engineer or street superintendent, and that if such is not satisfactory it shall be put in such condition, and as to the character of material to be used and how the repairs are to be made. In the fourth clause it is provided that: "The city engineer or street superintendent, or other person put in charge of or in

management of the streets of Huntsville, shall be the sole judge of when said pavement shall need repair, and the party of the second part [the paving company] shall repair same at its own expense during the life of this contract, and shall make said repairs immediately on the direction of said engineer, street superintendent or other person put in charge of said streets;" and then follows a provision that if the paving company should fail to begin making repairs within 20 days after notice by registered letter, or, after beginning, fail to complete them in a manner satisfactory to the engineer or street superintendent within 30 days from the time they were begun, "then in that or either event the party of the first part [the city] shall be authorized to make said repairs, either by itself  *  *  *  or through contract or in any such manner as it sees proper, and the party of the second part, within ten days, after a certificate of the amount of such damage signed by the officer or agent of the party of the first part in charge of said repair work, or charged with the supervision of the same, shall have been mailed by registered letter to the party of the second part at Memphis, Tenn., shall pay to the said party of the first part the account so due it according to such certificate, and the action of the officer or agent of the party of the first part put in charge of such repair work, or the supervision of such repair work, shall be prima facie evidence as to the amount due the party of the first part by the party of the second part; and that the party of the second part or its sureties on said bond hereinafter provided for, shall not be heard to question the necessity for such repair or the costs thereof, except that it may show that such repair work was not done or that the amount so certified to it was not expended, but the party of the second part, and the sureties on its said bond, shall

be liable absolutely for any amounts expended by the party of the first part for such repairs not grossly excessive."

It is the last portion of the fourth clause of the contract which is insisted upon as evincing an intention of the parties that the repair of the street by the city is a condition precedent to liability upon said bond, it beng urged that the above quoted language, "the party of the first part shall be authorized to make said repair," etc., in event of failure on the part of second party to do so, means that before any liability accrues on said bond the city is under duty to first make the repairs, and that in fact the word "authorized" as therein used means "required." It is conceded by appellant's counsel that, to quote from their brief: "The contract fixes the absolute duty on the paving company to make the repairs, making the city official the sole judge as to when repairs are needed; and, if it ended there and did not provide a remedy for the city on the failure of the paving company to begin work within a certain time, it might be argued most forcibly that an action for breach of the bond could be maintained against the principal and sureties, or either, immediately on failure of the paving company to begin work within the prescribed time."

"The contract must also be construed according to its terms. Its words, if of common use, must be taken in their ordinary, usual significance; and if technical words are employed, their technical meaning must be ascertained and accepted. This is the general rule in the construction of the words of a contract, prevailing unless it clearly appears from the context of the instrument that the parties did not use them in their ordinary or technical sense."—*Brush Elec. Co. v. City of Montgomery*, 114 Ala. 433, 21 South. 960.

The word "authorized" is defined as: 1. "Possessed of or endowed with authority, as an authorized agent. 2. Sanctioned or approved by authority."—Webster's New Int. Dict. 155, 156.

There is nothing in the contract to indicate that the word "authorized" was intended to be given other than its ordinary meaning, and it requires no argument to show that to have it read as "required,' as would follow from insistence of counsel for appellant, would clearly be out of harmony with its ordinary meaning. In these instances where the word was construed as imposing a "duty" to act, the construction was justifiable only upon the ground that it clearly appeared from the context of the instrument to be the intention of the parties. In the instant case there is nothing in the context of the instrument which would justify giving to the word "authorized" any meaning other than its usual significance.

The definition of a condition precedent, as found in 8 Cyc. 558, is given as follows: "A condition which calls for the performance of some act or the happening of some event after the terms of the contract have been agreed upon, before the contract shall take effect."

And the following from 1 Bouvier's Law Dict. 382: "Precedent conditions are those which are to be performed before the estate in the obligation commences, or the bequest takes effect.

See, also, *Fulenwider v. Rowan*, 136 Ala. 287, 34 South. 975; *Crass v. Scruggs,* 155 Ala. 258, 22 South 81.

The last clause of the "repair contract" provided: "It is further understood and agreed * * * that upon the execution of this contract, the party of the second part shall make and execute a bond in the penal sum of ten thousand dollars for the *faithful performance-*

*ance of this contract and the making of the repairs* here-
in stipulated, with good and sufficient surety, . *   *   *
and said bond shall be taken and considered as a part
thereof as fully and effectually as if incorporated here-
in in full."

. The bond here sued upon, after referring to the exe-
cution of the above-mentioned contract of date March
24, 1909, for the maintenance of certain street paving
which the said Mineral Rubber Paving Company has
received from the said city of Huntsville, proceeds as
follows: "Now the condition of this obligation is such
that if the said Mineral Rubber Company shall faith-
fully and promptly perform said contract and shall well
and truly keep and perform all the terms and conditions
of said contract on its part to be kept and performed
and so indemnify and save harmless the city of Hunts-
ville, a municipal corporation as aforesaid, as there-
in stipulated, then this obligation shall be of no effect,
otherwise to remain in full force and virtue."

The paving company had entered into a contract to
keep in repair said street, and assumed in regard there-
to numerous binding obligations, and to this contract
reference is made in the bond and the condition of
which was that said paving company should faithfully
perform all the terms and conditions of said contract.
The condition of the bond is as broad as the terms of
the contract, and if the paving company failed to faith-
fully perform the terms and conditions of the contract,
then there was a breach of the bond, for it is given for
the faithful performance of the contract.

We think it entirely clear that the provision of the
contract authorizing the city to do the work on the
failure of the paving company to do it cannot be con-
strued as requiring in such event the city to do the
work as a condition precedent to recovery, without do-

ing violence to the plain language of the contract and the clear intention of the parties. To so make the repairs itself, in the event of such failure, was the right of the city, irrespective of any stipulation in the contract to that effect, and the provision in reference thereto was clearly placed in the contract for the protection of the city, prescribing a method of determining the amount of damages in the event the city saw fit to make the repairs itself. But we need not dwell longer on the question. We are clear in our conviction that it was not the intention of the parties to the contract to require the city to first repair the street as a condition precedent to liability of defendant upon the bond.

(2) In a supplemental brief of counsel for appellant it is further urged that the bond sued on was one of indemnity against liability, and that therefore liability on the bond could attach only upon the actual payment by the city for the repairs. The brief cites the case of *Taliaferro v. Brown,* 11 Ala. 703, in support of the insistence, in which case the bond construed was held to be a contract of indemnity against actual loss and not against liability. As was said in that case: "The question * * * is as to the intention, and if that is ascertained, it must control the entire instrument."

The language of the bond there under consideration was held to be ambiguous, and the court, in ascertaining the intention of the parties by considering the surrounding facts and circumstances, the probable inducements to entering into it, and the object and purpose thereof, reached the conclusion that the bond was one for indemnity against actual loss, and not against liability. But we cannot so construe the bond here. We find no ambiguity in the language used, and it was not given to cover any existing liability, but pertained to the performance in the future of certain agreements to

repair, made by the principal, the paving company. It was given for the faithful performance of that contract. The conditions of the bond have been quoted above, as well as the essential features of the contract, the faithful performance of which the bond was given to secure. It is simply a question of intention of the parties, which, when ascertained, must control. The language is plain and unmistakable, and to our minds the intention of the parties is quite clear; and, construing the language of the bond in connection with the contract of the paving company, we are of opinion that there is no solid foundation upon which the insistence of counsel may rest. The contract of the paving company to repair has not been faithfully kept, but has been breached. The bond was given for the faithful performance of said contract, and we are of opinion that liability of the surety has been conclusively shown.

Since writing the foregoing, counsel for appellee have cited us the very recent case of *United States v. United States F. & G. Co.*, 236 U. S. 512, 35 Sup. Ct. 298, 59 L. Ed. .......... Between that case and this we find some striking analogies. In discussing in that case article 4 of the contract (corresponding somewhat, in the particular here noted, to the fourth clause of the contract here under review), it is said: "We do not think article 4 can properly be so construed as to restrict the government to the remedy there indicated in the event of default by the contractor, or to exclude recovery of the actual damages directly attributable to such default if, in the reasonable exercise of its rights, the government determines not to complete the building. In the language of the article, the government is 'authorized and empowered'—not 'obliged'—to complete the work at the expense of the contractor. * * * The phraseology indicates a purpose to give to the government a

right additional to those it would otherwise have; the stipulation is made for its benefit, and, being optional in favor of the defaulting contractor or his surety."

A reading of the opinion will disclose that the language there used fully supports the conclusion we have here reached.

We deem a further discussion unnecessary. We have here treated the question pressed upon our attention by appellant's counsel as being presented by the assignments of error. We find no error in the ruling of the court below, and the judgment appealed from is accordingly affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN and SAYRE, JJ., concur.