## BOARD OF EDUCATION OF CITY OF ASBURY PARK v. MARYLAND CASUALTY CO. OF BALTIMORE, MD.

Circuit Court of Appeals, Third Circuit.
June 21, 1928.

No. 3767.

1. Appeal and error ⟝1008(2)—Trial judge's findings on questions of fact are conclusive, where jury is waived.

Trial judge's findings on question of fact in case tried to judge without jury are conclusive, though open to inquiry as to whether there was evidence that sustains them.

2. Principal and surety ⟝87—On breach of contract by building contractor, rights of owner and liability of surety on contractor's bond become fixed.

Breach by building contractor of contract to construct building is likewise a breach of contract of bond, and on such breach rights of owner of building and liability of surety on bond become fixed.

3. Principal and surety ⟝86—Unless otherwise provided by contract, owner need not complete work abandoned by contractor as condition precedent to recovery on assurance bond.

Unless otherwise provided by building contract, owner is not required to complete work abandoned by contractor as condition precedent to recovery on bond of assurance, but surety will be liable for damages occasioned by the breach.

4. Principal and surety ⟝82(2)—On default by building contractor and reletting of contract for completion, measure of damages is difference between defaulter's price and price of reletting.

Where, on default by building contractor, owner let contract for completion of building on terms identical with those of first contract, except as to price, and contract did not require owner to complete work on contractor's default, held, that measure of damages for such default is difference between defaulter's price and price of subsequent letting.

5. Contracts ⟝321(1)—On building contractor's default, owner may complete work itself or relet.

On default by building contractor, under general law, owner has right to go on with work without authority therefor being conferred by contract, either by doing work itself or reletting.

6. Principal and surety ⟝82(2)—As respects measure of surety's liability, building contract held not to require completion by owner.

Provision in building contract giving owner right and power to complete building on contract on default held not to require owner to complete work on such default, so as to preclude owner from recovering from surety as measure of damages difference between defaulter's price and price of subsequent letting of contract for completion of building.

7. Contracts ⟝321(1)—Principal and surety ⟝100(1)—That owner relet work, instead of completing it itself, on building contractor's default, did not release contractor and surety from liability.

Since rights and liabilities between owner and building contractor and his sureties became fixed on contractor's default, liability of contractor and surety was not released when owner relet work to another contractor, instead of completing work itself.

8. Principal and surety ⟝82(2)—Surety on defaulting building contractor's bond held not entitled to credit for work called for in original contract, but omitted from reletting contract.

Where, on default by building contractor, owner relet contract for completion to another in identical terms as first contract, except as to price, held that, in action against surety on defaulting contractor's bond, surety was not entitled to claim credit for work called for in original contract, which was omitted in reletting contract, since surety's liability became fixed immediately on default.

9. Principal and surety ⟝82(2)—On building contractor's default, owner held entitled to recover sums expended for watchman's wages, costs of inventory, and advertising for new bids.

On default by building contractor, owner held entitled to recover of contractor's surety sums expended directly in consequence of contractor's breach, such as watchman's wages, costs of inventory, and advertising for new bids.

10. Principal and surety ⟝82(2)—On building contractor's default, owner held not entitled to recover architect's fees, based on total costs of completed building, where fact of completion was still in dispute.

Where architect's fees were based on total cost of completed building, held that, on contractor's default, owner was not entitled to recover architect's fees of surety, where fact of completion of building was in dispute, since architect's fee was not a damage determinable at time of default, at which time surety's liability became fixed.

In Error to the District Court of the United States for the District of New Jersey; Joseph L. Bodine, Judge.

Action by the Board of Education of the City of Asbury Park, N. J., against the Maryland Casualty Company of Baltimore, Md. Judgment for plaintiff, and defendant brings error. Affirmed, on condition of remittitur.

John M. Enright and McDermott, Enright & Carpenter, all of Jersey City, N. J., for plaintiff in error.

Arthur F. Egner and McCarter & English, all of Newark, N. J., for defendant in error.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. The judgment which is brought here for review by this writ of error is perhaps the last step in protracted litigation which the Board of Education of the City of Asbury Park began by an action against the Maryland Casualty Company, surety on a building contract, to recover for the contractor's default. The main facts were stated in the opinion of this court when it disposed of another phase of the controversy. Maryland Casualty Company v. Board of Education (C. C. A.) 20 F.(2d) 799.

[1] A jury was waived and the case tried to the judge. As his findings on questions of fact are conclusive (though of course open to inquiry as to whether there was evidence that sustains them, Ward v. Joslin, 186 U. S. 142, 147, 22 S. Ct. 807, 46 L. Ed. 1093), we shall confine our review to questions of law of which the thirty assignments of error, when compressed, raise three.

The first question concerns the measure of damages. This turns on another, namely, whether the measure is that prescribed by general law or by the terms of the contract itself.

We first look to general law applicable to the facts of the case which, on this point, are these: Burke Brothers Construction Company entered into a contract with the plaintiff municipal corporation for the erection of a school building and gave bond for performance with the defendant as surety. Burke Brothers Company defaulted rather promptly. The plaintiff took possession and after advertising for bids let the completion of the work to the McClary Corporation under a contract in terms identical with that of Burke Brothers Company except at an in-creased cost of about $30,000. Looking upon this difference in cost as its main damage the plaintiff brought this suit against the surety on the first contract before the building had been completed under the second, asserting the difference in cost between the two contracts as the proper measure of damages. The defendant, however, regarding the suit as prematurely brought, maintained at the trial, and still maintains, that the proper measure of damages is the difference between the price of construction under the Burke Brothers' contract and the actual cost of the building when completed under the McClary contract. Whether the building has in fact been completed is a subsidiary question between the plaintiff and the second contractor, still open and having a bearing on the matter under discussion only in the event the defendant should prevail on the law.

[2, 3] Burke Brothers Company engaged to erect for the plaintiff a building of a certain kind at a named cost. By that contract, the duty of the company to erect and the right of the plaintiff to obtain a building of that kind at that cost became fixed. The bond which the defendant gave to assure performance was tied to the contract and its condition was as broad as its terms. Breach of the contract faithfully to perform was likewise a breach of the bond and on that breach the rights of the plaintiff municipal corporation and the liability of the defendant surety company became fixed. United States v. U. S. Fidelity Company, 236 U. S. 512, 524, 35 S. Ct. 298, 59 L. Ed. 696. Failing, because of the breach, to obtain the building contracted for, the plaintiff next had a right to damages. When and in what amount? Clearly the plaintiff was entitled to the damages it had sustained at the time of the breach. Such being its right, when could the plaintiff assert it by suit? That depends on the character of the defendant's bond. If it is a bond of indemnity, suit of course must await the completion of the building, for until then no one can determine its cost and the consequent loss in order to determine the amount of indemnity. But the bond in suit is not one of indemnity. National Surety Co. v. City of Huntsville, 192 Ala. 82, 68 So. 373. It is a bond to assure performance of a contract or else respond in damages. As the contractor failed to perform, its surety may be called upon at once to pay the damages without waiting for the completion of the building by the owner or another party. Indeed the building may never be completed, for, unless otherwise provided by the contract, the owner is not required to complete

the work abandoned by the contractor as a condition precedent to recovery on a bond of assurance, Wills v. Peace Creek Drainage District (C. C. A.) 4 F.(2d) 519; National Surety Co. v. City of Huntsville, 192 Ala. 82, 68 So. 373; Newton v. Consolidated Constr. Co., 184 Mich. 63, 150 N. W. 348; King v. Nichols, 53 Minn. 453, 55 N. W. .604; Simons v. Wittmann, 113 Mo. App. 357, 88 S. W. 791; Cinn. Ry. v. Carthage, 36 Ohio St. 631, yet the surety will be liable for damages occasioned by the breach.

[4] In what amount? That depends on the plaintiff's ability to prove damages—a matter of proofs. If the owner does not go on with the building, either by himself or through another, proof of what its completion would reasonably cost has been accepted as a factor in estimating damages. But where after breach a contract for completion has been let on terms identical with those of the first contract except as to price, as in this case, courts have pronounced that the measure of damages is the difference between the defaulter's price and the price of the subsequent letting. City of Goldsboro v. Moffett (C. C.) 49 F. 213, 216; Schuyler County v. Missouri Bridge & Iron Co., 173 Ill. App. 435, Id., 256 Ill. 348, 100 N. E. 239. This rule is applied in such cases because of the positive proof of damages made available by the cost price named in the second contract into which the owner had been forced to enter by the breach of the first contract, and this proof of damages being at hand may at once be used in a suit to recover.

Against this rule of measure of damages the defendant cites and earnestly relies on the decision in American Surety Company v. Woods (C. C. A.) 105 F. 741, which on its face is seemingly opposed to the rule, yet the court which rendered that decision later distinguished it in Wills v. Peace Creek Drainage District, supra, by pointing out (first holding to the general rule that the right of an owner to sue for breach of a building contract is not dependent on his completing the abandoned work) that the contract in that case contained a provision that on default by the contractor the owner should complete the work and that as a matter of fact the work had been abandoned by both parties.

[5-7] Finding that the true measure of damages is the difference between the defaulter's price and the cost price of re-letting when the contract contains no provision which requires the owner to complete the work upon breach by the contractor, the rule applies in this case if the contract contains no such provision. But the defendant says, and on this it mainly rests its case, that the contract does contain just such a provision. Its relevant parts are as follows:

"Should the contractor * * * fail to comply with the terms of the contract, the owner * * * may and shall have the right and power to enter upon and take possession of the premises and all materials thereon, and * * * to employ workmen by day's work or otherwise, and to provide materials sufficient to finish the work, * * *. The finishing of the various works will be deducted from the amount of the contract, or from any payments due or to be due said contractor. In such an event the payments herein agreed upon shall not be due until the entire work shall be completed. Any balance due the contractor when the work is completed shall be paid to the contractor by the owner," and for expenditures in excess of the balance due the contractor it shall reimburse the owner.

The defendant insists that this provision puts the case outside the general rule of law (which it recognizes) and specifies a procedure binding upon the plaintiff which is the only one it may follow in the event of the contractor's default. We do not so construe the provision. The owner had under general law the right to go on with the work without the authority seemingly conferred by the provision, National Surety Co. v. City of Huntsville, supra, either by doing the work itself or re-letting, and by none of its terms was that right surrendered or abrogated or the contractor's liability waived or suspended. The cited provision is essentially for the owner's benefit by which it protected itself from ill-timed demands of the contractor for balances which it might claim were due, and by which, through caution perhaps, it asserted or reserved rights which the law already gave it. Closely analogous provisions appeared in United States v. Fidelity Company, supra, and National Surety Company v. City of Huntsville, supra, and were not construed to restrict the owner to the remedy therein indicated in the event of default by the contractor or to exclude recovery for damages directly attributable to the default if in the reasonable exercise of its rights the owner determines to re-let the work, or, indeed, determines not to complete it at all. In the language of the provision here in question it is said: "The owner * * * may and shall have the right and power to enter upon" the premises and complete the building. The provision did no more than recognize the owner's "right" and

"power" to complete the work, which the law had already given it. But even if the provision should be construed as giving the owner the right to complete the work, it did not impose on it an, obligation to do so. The liability of the contractor, and its surety, which became fixed upon the occurrence of the default, was not released when the plaintiff owner re-let the work to another contractor instead of completing the work itself with its own workmen and its own materials under the cited provision, for as the court said in United States v. U. S. Fidelity Company, supra, speaking of the parties: "Their rights and liabilities between themselves, being already fixed by the completed breach of the * * * agreement were not to be affected by any subsequent and independent transaction between the [owner] and third parties."

[8] During the progress of construction under the McClary contract certain work called for by the Burke Brothers contract was omitted, amounting to a disputed sum of $10,000 or $16,000. Extra work not named in the Burke Brothers contract, exceeding the cost of that omitted, was performed under the McClary contract. The defendant claimed a credit for the former; the plaintiff conceded that the defendant could not be held for the latter. The judge disallowed the claimed credit and the defendant assigned error.

The judge was right for he was consistent in applying the rule as to the measure of damages which we have stated and approved, that rule covering the damages which the plaintiff had suffered because of the breach, and at the time of the breach, without regard to whether work was resumed and, if resumed, without regard to whether the structure was completed as specified. The plaintiff had by force of the contract a right to have the precise building which the contractor promised to erect. When the contractor failed to erect and deliver, the plaintiff then had, by force of the law applicable to the contract, the right to have his injury wholly redressed by the defendant which had assured performance. Cases, supra.

Aside from the difference between the cost figures of the two contracts, amounting to $28,767, the plaintiff claimed as damages various sums of money which it was forced to expend directly in consequence of the defendant's breach of its contract, such as watchman's wages, attorneys' fees, costs of inventory and advertising for new bids, etc. The court allowed all except its claim for attorneys' fees. Among those allowed was one for architect's fee which, under a contract entered into between the plaintiff owner and its architect, not in evidence but testified as calling for "a fee of five per cent. on the total cost of the building," was reckoned on the difference between the cost figures of the two contracts as above stated and amounted to the sum of $1,438.35.

[9, 10] We entertain no doubt of the validity of all claims allowed except that for the architect's fee. They flowed directly from the defendant's breach, were definitely ascertained and rightly proved and should be recovered. But the architect's fee is on a different plane. His fee, being based "on the total cost of the building" and not being capable of determination until the building shall have been completed, and the fact of its completion being still in dispute, may not yet be wholly due and payable and in consequence the plaintiff's damage in respect thereto may not yet have been fully sustained.

While the plaintiff's liability for architect's fee based on the total cost of the building arose at the time of the breach and perhaps continued into and through the McClary construction, and while the defendant is liable to the plaintiff for any increase in that fee which it was required to pay as a direct consequence of the breach, it clearly was not a damage determinable at the time of the breach and was a damage entirely different from that which the plaintiff sustained at the time of the breach in not obtaining a building of the kind and cost the plaintiff had promised to erect. So far as the record discloses the plaintiff's liability to the architect is a fee of five per cent. on actual cost, not on cost figures in contracts. That also is the limit of its damage. Such damage when sustained it is possible the plaintiff may recover. But to be recovered, it must first be proved. We find proofs of this claim lacking. Therefore we affirm the judgment if the plaintiff will enter into a remittitur as to its claim for architect's fee amounting to $1,438.35 and interest, if interest thereon was added, without prejudice to the right of the plaintiff later to recover for the architect's fee in a properly proven amount; otherwise the judgment is reversed.