169 So. 699
**CITY OF GREENVILLE v. GOODWYN et al.**

3 Div. 151.

Supreme Court of Alabama.

June 25, 1936.

Rehearing Denied Oct. 8, 1936.

Powell & Hamilton, of Greenville, and Steiner, Crum & Weil, of Montgomery, for appellant.

Fred S. Ball, Jr., of Montgomery, A. A. Carmichael, Atty. Gen., and Thos. Seay Lawson, Asst. Atty. Gen., for appellees.

KNIGHT, Justice.

The city of Greenville undertook to have certain of its streets improved under the provisions of chapter 43, article 33 of the Code (section 2174 et seq.). To this end proper ordinances were adopted, and a contract was entered into by the city with one P. H. Tharp, contractor, to make the improvements according to the drawings, plans, and specifications adopted by the mayor and council of the city of Greenville, Ala.

While we fail to find in the record any ordinance specifically providing for the execution of a bond on the part of the said contractor for the performance of the contract on his part, yet we find that the contract made with the contractor provided for a bond in the sum of $67,000, conditioned for the faithful performance of the contract on his part, and we also find ordinance or resolution authorizing the mayor to execute the contract on the part of the city with Tharp.

Tharp, pursuant to the terms of his said contract in that respect, executed the bond, with the Union Indemnity Company as his surety thereon.

The contractor made default in his said undertaking with the city, and thereafter the city secured a judgment against the surety in the District Court of the United States for the sum of $34,140.26. This judgment has not been paid.

The Union Indemnity Company, surety on the bond of the said Tharp, was, at the time it became such surety, a foreign corporation but duly qualified to do business in this state. After the execution of said bond, the said Union Indemnity Company went into the hands of a receiver under proceedings in the civil district court at New Orleans, La. Thereafter Hon. R. T. Goodwyn was appointed ancillary receiver by the circuit court of Montgomery county to take charge of and liquidate the business of said company within the state of Alabama.

In order to comply with the requirements of section 2642 of the Code, the Union Indemnity Company duly deposited with the Treasurer of the State of Alabama $50,000, in trust for the benefit of the resident holders of obligations of said company. This deposit fund of $50,000 was paid over to the ancillary receiver, and is being administered in the circuit court of Montgomery county.

By an order or decree of said court, all creditors of the Union Indemnity Company, resident of this state, were directed to file their claims in said court for allowance or rejection. Pursuant to this order or decree a large number of creditors duly filed their claims, including claims of creditors making claim against said special trust fund of $50,000. Among the claims filed were numerous claims by the state of Alabama based on bonds executed by various county and state officials, as principals, and the Union Indemnity Company, as surety.

The city of Greenville filed its claim in the circuit court, and by an amendment thereto sought to have its claim against the Union Indemnity Company, growing out of the default of said Tharp, allowed as a charge against the said special trust fund created under the provisions of section 2642, Code.

The state of Alabama filed objections to the allowance and payment of the claim of the city of Greenville out of the said "special trust fund upon the grounds, inter alia, that the said trust fund was "insufficient to pay the official bond claims in full and that official bond claims will be paid only a proportionate amount, and that to allow the claims of the city of Greenville will still further reduce the amount petitioner (State of Alabama) is to receive on its various claims heretofore allowed by the court," and further that "the bond on which said claim is based is not a bond required by law to be approved by some officer as provided by section 2657."

The court upon the hearing of said matters allowed the claim of the city of Greenville as "a common claim to participate in the general funds being administered," but disallowed it as proper claim against said special trust fund of $50,000, holding that the said claim of the city of Greenville "was not an official bond claim within the meaning of said section" (2657). It is from

this decree that the city of Greenville prosecutes this appeal.

█ Section 2642 stands in pari materia with section 2657 of Code, and the two sections must be construed together. While section 2642 in terms provides that this special trust fund of $50,000 is. held "in trust for the benefit of the resident holders of obligations of such corporation," yet section 2657 proceeds to limit the holders of the obligations of the corporation to a certain designated class. By this last section it is expressly provided: "*Article applies only to official bonds and the like.—* Nothing herein contained shall apply to any bond or undertaking which is not by law required to be approved by any state, county, municipal, precinct, township, district, or other like office, or by any judge, clerk or register, of any court of this state, or to corporations engaged merely in the business of becoming sureties on any such bond or undertaking."

█ In short, in order that the bond may come within the provisions of section 2657 of the Code it must be an official bond, or a bond by law required to be approved by some authority designated in the statute. Fidelity & Deposit Co. v. Goodwyn, 231 Ala. 44, 163 So. 341.

In the Goodwyn Case, supra, this court had occasion to consider and construe sections 2642 and 2657 of the Code. We there held that the two sections must be construed together, and when so construed, that the specific provisions of section 2657 must prevail as the last expression of the legislative will. We there held that the article applied only to a bond to be approved by any state, county, municipal, precinct, township, district, or other like office, or by any judge, clerk, or register of any county of this state. We further held that it was the legislative intent that the $50,000 deposit required was to secure primarily official bond claims and other bond claims mentioned in section 2657 of the Code; and that other bond claims not so included are not preferred claims upon the deposit.

It is to be here noted that the bond in question was executed prior to the passage of the act approved February 10, 1927. Gen.Acts 1927, p. 37.

█ The bond in question does not fall within the class of bonds provided for in section 2657, and appellant is nót entitled to have his claim allowed as a preferred claim against the special trust fund of $50,000 to be paid either in whole or ratably out of said fund, so long as there are claims that should be paid out of said fund, and which may exhaust the same. The trial court properly so ruled, and its decree is due to be affirmed. It will be so ordered.

Affirmed.

All the Justices concur.

On Rehearing.

PER CURIAM.
Application overruled.

ANDERSON, C. J., and THOMAS, BROWN, and KNIGHT, JJ., concur.

GARDNER, BOULDIN, and FOSTER, JJ., dissent.

BOULDIN, Justice (dissenting).
The city of Greenville, in 1925, by authority of Code, § 2182, required a contractor's bond for the faithful performance of a contract for street improvements made pursuant to improvement ordinances under the Municipal Code.

Union Indemnity Company, a foreign corporation, qualified under article 7, chapter 45 of the Code (sections 2640 to 2658) to become surety on bonds of the class therein defined, executed such bond as surety. In due course judgment was recovered by the city against such surety.

The question here involved is the right of the city to share in the special deposit of securities of the value of $50,000 under Code, § 2642.

This special deposit is declared to be "in trust for the benefit of the resident holders of the obligations of such corporation." Code, § 2642.

This is the sole expression in the statute naming the beneficiaries of this deposit. The deposit is required as one of the conditions precedent on which the foreign corporation shall do the .class of surety business in Alabama defined in the article. Other conditions appearing in the same section include a definite showing of solvency, a stated amount of unimpaired capital assets, and reserve, to be passed upon by designated state authority.

The insurance commissioner is empowered to demand information touching continued solvency, and when he deems it unsafe to further accept such company as sole surety on bonds of the class it has been specially empowered to execute, he may re-

voke the authority theretofore granted. Section 2646, Code.

The deposit is to make readily available assets of such company in Alabama to meet any liability judicially determined on its Alabama obligations. Section 2649. It must be kept intact for such purpose by replenishment from time to time. Section 2654.

We should disabuse our minds of any idea that we are dealing with a fund to be apportioned among a special class of holders in case of insolvency. It is a fund available at all times to resident holders of such bonds.

Who are the "resident holders of the obligations of such corporation" within the meaning of the statute?

This is an inquiry of grave public concern. Cities have, ever since this statute was enacted in 1897, taken such guaranty companies as sureties on contractors' bonds for street improvements, sewers, light and water plants, school buildings, etc. Counties have likewise taken them as sureties on contractors' bonds for public buildings, roads, and bridges.

Are cities and counties entitled to all the security and means of collection the statutes afford? If not, surely public officers are under no duty, probably not authorized, to further accept such sureties on bonds unless authorized by some other statute.

Guaranty companies, domestic and foreign, qualified under this statute, are confronted with a curtailment of their business. Certainly all concerned are entitled to a very definite announcement defining bonds protected by this statute.

In view of these considerations, the writer feels impelled to give a full reconsideration of the proper construction of the article headed "Bonds by Guarantee Companies," Code, § 2640 et seq.

The statute involved was enacted by the Legislature of 1896–97 (Acts 1896–97, p. 830) under the title: "To authorize corporations, having the power under their charter, to become securities on the official bonds of State, county and municipal officers, and receivers, guardians, administrators, trustees, assignees, and executors, and on all bonds or undertakings, required in any judicial proceeding, and on all bonds or undertakings required or permitted by the laws of this State, to be executed with sureties; to regulate the giving of such bonds and prescribe the qualifications of such corporations; and to provide for the relief of such corporations from further liability thereon."

The first section of this act, brought forward without change in the Code of 1896, § 3092, Code of 1907, § 1507, and Code of 1923, § 2640, reads: "Whenever any person or corporation is or may be required or permitted to execute bond, or other undertaking, of whatsoever nature, with surety or sureties for the faithful discharge or performance of the duties of any state, county, municipal, precinct, township, district, or corporate office or position, or of any position of public or private trust or employment, for the faithful discharge or performance of any duty, or for the doing or not doing of anything in such bond or undertaking specified; or when any person or corporation is required or permitted to execute any bond or other undertaking, of whatsoever nature, with surety or sureties, in any judicial proceeding, or as guardian, executor, administrator, receiver, assignee, or trustee, the court, officer or person having authority, or charged with the duty of approving such bond or undertaking, may, if such bond or undertaking is otherwise sufficient, approve the same when executed by a corporation having the power or authority under its charter to become surety on such bond or undertaking, as surety, and having complied with the provisions of this article; and the execution by any such corporation, as surety, of any such bond or undertaking shall be, in all respects, upon the approval and acceptance of such bond, a full and complete compliance with the requirements of any law, ordinance, rule, or regulation requiring that such bond or undertaking shall be executed by one surety, or by one or more sureties, or that such surety or sureties shall be residents of the state, or any county therein, or shall be householders or freeholders, or either or both, or shall possess any other qualification." Section 2640, Code 1923.

Thus, in one long rather involved sentence this section undertook to set out the scope and purpose of the act.

We observe that all this section down to the words "the court, officer or person having authority, or charged with the duty of approving *such bond*" is embraced in a "whenever" clause. (Italics supplied.)

Paraphrasing the section so far as pertains to the inquiry before us, it provides: Whenever, by any law or ordinance, any person is required to execute bond with

surety, for the faithful performance of any duty, or for the doing of anything in such bond specified, such bond may be executed by a corporation having the power or authority under its charter to execute same as surety, and having complied with the provisions of this article. The officer charged by such law or ordinance with the duty of approving such bond may approve same when executed by such corporation as sole surety, and a bond so taken shall be a complete compliance with the law or ordinance requiring bond with surety or sureties.

The statute then proceeds (section 2641) to prescribe the terms and conditions by which domestic companies may qualify under the article. Section 2642 deals with the same subject as to foreign corporations.

Upon qualification by a company, domestic or foreign, these sections provide that the superintendent of insurance "shall issue to such corporation, and to each of its agents in this state, a certificate that it is authorized to become and be accepted as sole security on all bonds or undertakings required or permitted by law, or the charters, ordinances, rules, and regulations of any county, municipal corporation, board, body, organization, or public officer." Section 2642.

This certificate is the evidence issued by the state, through a state officer, specifying the bonds which such company is empowered to execute as sole surety, and which it is the duty of the proper authority to accept and approve. This certificate specifically authorizes the making of bonds "required" by "ordinance" of a "municipal corporation."

Finally, section 2657 provides: *"Article applies only to official bonds and the like.—* Nothing herein contained shall apply to any bond or undertaking which is not by law required to be approved by any state, county, municipal, precinct, township, district, or other like office, or by any judge, clerk or register, of any court of this state, or to corporations engaged merely in the business of becoming sureties on any such bond or undertaking."

As pointed out in Fidelity & Deposit Co. of Maryland v. Goodwyn, 231 Ala. 44, 163 So. 341, this section came into the original act of 1897, through a conference committee of the two houses, and may be treated as the last legislative expression.

It will be observed, first, this section undertakes to define the bonds to which no part of the article shall apply. Manifestly, fidelity and guaranty companies, domestic and foreign, then engaged under their charter powers in a private fidelity bond business, were concerned that they should not be compelled, under the general terms of section 1 of the act, now section 2640 of the Code, to qualify under this act in order to continue in a private fidelity bond business. To safeguard such company in a business authorized by charter in which no public interests were involved, nor interests to be protected in judicial proceedings, nor trusts, such as guardianship, administration of estates, and receiverships, was, we think, one of the ends sought by section 2657. This is made clear by the last clause above quoted, saying nothing in this article shall apply to corporations engaged merely in such private business.

But in defining what bond-making business is wholly without the act, the section defined what bond-making business is within the statute; bond-making which companies qualified under the act, and they alone, should engage in.

As well-stated in Fidelity & Deposit Co. of Maryland v. Goodwyn, 231 Ala. 44, 48, 163 So. 341, this section "can mean only that the 'article shall apply only to a bond to be approved by any state, county, municipal, precinct, township, district, or other like office, or by any judge, clerk or register of any court of this state.' " 231 Ala. 44, 48, 163 So. 341, 344.

This, just as sections 2640 and 2642, includes bonds to be approved by municipal officers. There is not an intimation here that this does not include bonds required by municipal ordinances for those bound for a "faithful discharge" of "any duty" in the bond "specified" as per section 2640, nor does section 2657 negative the coverage of bonds "required" by "municipal ordinances" as per section 2642.

The public has the same interest and concern in the faithful performance of a public improvement contract as in the performance of the duties of municipal officers. The safeguarding of such interest by a bond given under the article is as vital in the one case as in the other. One of the reasons for the statute was to avoid evils growing out of giving personal security on bonds in which the public or cestuis que trustent are interested. Contractors' bonds are among the most difficult to provide personal security.

That such bond was accepted, acted upon, and so approved by the proper municipal officer as to become binding, was adjudicated in the judgment against the surety.

The catch line of section 2657—"Article applies only to official bonds and the like"—is of like kind as that to section 2640, saying: "Official bonds may be executed by guarantee companies." Neither catch line strikes down the express provisions of the statute itself. "And the like," as a definition, is so indefinite as to leave the whole matter in such uncertainty as to lead to great confusion. Making of official bonds is but a fraction of the business expressly covered by the statute.

Section 2657 is to be construed in pari' materia with the prior sections of the same act. This means that the latter does not strike out the former unless clearly so intended. The presumption is all provisions are to have a field of operation. This section does not deal at all with the beneficiaries of the special deposit. This was done in the section requiring such deposit— "for the benefit of the resident holders of the obligations of such corporation." Section 2642.

It is not to be questioned that the city council, under the improvement statutes, had full power by ordinance to require a contractor's bond, and that this was done by incorporating such requirement in the specifications which became part of the ordinance. Code, § 2182; National Surety Company v. City of Huntsville, 192 Ala. 82, 68 So. 373; Peinhardt v. West et al., 212 Ala. 83, 101 So. 736; Somerville v. Wood et al., 129 Ala. 369, 30 So. 280. This last-cited case expressly holds that a bond required by municipal ordinance, which the council has implied authority to ordain, though not mandatory, is a bond required by law.

So, when the contractor presented a bond in due form with good and sufficient surety, it became the legal duty of the mayor to approve it. State ex rel. Brooks v. Gullatt et al., 210 Ala. 452, 455, 98 So. 373.

Considering the entire structure and purpose of the article on guaranty companies, I am of opinion the bond here in question is one proper to be made by such guaranty company under the statute; that the city of Greenville is, therefore, a "resident holder of an obligation of such corporation," and therefore entitled to share in the fund provided for the benefit of such holders, without discrimination.

It appears the majority view is rested somewhat on Fidelity & Deposit Co. of Maryland v. Goodwyn, 231 Ala. 44, 163 So. 341. The result of the decision in that case was unquestionably correct. The bond on which the complainant relied in that case was a private obligation, given to, accepted, and approved by a private corporation. The first question certified to the court for decision was: "(1) Does the fund deposited by a foreign corporation under Code, § 2642, inure to the benefit of a claimant under a private fidelity bond?" The entire argument in the case is directed to answering that inquiry in the negative. The wording of that opinion should be read in the light of the case then before the court. The case does not hold that any preference is to be recognized as between claims coming within the act. Preferences were involved in the litigation, in that, when these statutory claims were paid, the balance of the deposit would, of course, become a part of the general fund as to which there would be no preferences under this article. That case did not deal with a contractor's bond under municipal ordinances or resolutions of a county board, and is not an authority on the question now before us.

The original act as finally completed and passed with sections 2640, 2642, and 2657, all as they now appear in the Code, was not intended to confer charter power to do a private fidelity bond business.

Under the act no corporation can qualify which is not authorized by its charter to execute the bonds therein defined. So corporations with charter power to do a private fidelity business could continue in that business without qualifying under this act.

Section 2657, by an added clause heretofore noted, recognizes the right to continue in such business as if this statute had not been enacted. "Nothing herein," no part of this statute, shall apply to a bond business outside this section is the language of section 2657. So, I am convinced that in no event does the holder of a claim on an ordinary bond, outside the classes named in the act, have any claim on this special deposit. It remains intact for the protection of resident holders of the obligations covered by the statute, all of them, not in some order of preference wholly unmentioned in the statute. In my opinion the decision in the Goodwyn Case, supra, was not intended to rule otherwise. If so, I think it should be modified to conform to the views here expressed.

In my opinion the instant case is one within the protection of section 2657, construed, as it should be, in connection with the entire statute. My reasons for such views have been given. I am therefore constrained to dissent.

GARDNER and FOSTER, JJ., concur in the foregoing dissent.