198 So. 250

## KINNEY v. GLENN.

### 6 Div. 470.

Court of Appeals of Alabama.
June 18, 1940.

Rehearing Denied Aug. 6, 1940.

491

Jim Gibson, of Birmingham, for appellee.

Erle Pettus, of Birmingham, for appellant.

BRICKEN, Presiding Judge.

The appeal in this case is from the final judgment in the court below in an action of

detinue where E. C. Kinney was plaintiff, and F. J. Glenn was defendant. As the case appears by mutual consent of parties to have been tried in the court below, the plaintiff sued to recover of defendant two bales of lint cotton, aggregating in weight 1,015 pounds, and 1,405 pounds of cotton seed, with the value of the hire or use thereof during detention.

The action was brought on the 6th day of October, 1936, and the writ of detinue, which issued in said cause, was executed by the Sheriff on said day by said Sheriff taking into his possession said two bales of cotton and said cotton seed, and by serving a copy of said writ in detinue and of the summons and complaint on the defendant. The defendant did not make replevin of said property, and plaintiff making a restoration bond, as provided by law, said cotton and cotton seed was by the Sheriff delivered into the possession, custody and control of plaintiff, pending the final determination of the case.

The suit, in the court below, was founded upon a certain mortgage note, or written instrument, which plaintiff claimed was executed by F. J. Glenn, the defendant, and Hugh Glenn, his son, to E. C. Kinney, the plaintiff on April 15, 1936, and payable on or before October 1, 1936, for the sum of $189.00 and which mortgage note purports to convey, along with other personal property, not here involved, all of the crops of cotton, corn and other produce raised, or cause to be raised by, or that might accrue to the makers of said mortgage in any legal manner during the year 1936, "and every year thereafter, until this debt is satisfied."

To the complaint, as filed and as thereafter amended, the defendant interposed his plea of the general issue, in short by consent with leave to give in evidence any matter which, if well pleaded, would be admissible in defense of the action, and with like leave to plaintiff by way of replication, etc.

The main question at issue, before the jury, upon the trial of the case was whether or not the defendant subscribed, signed or executed the mortgage note upon which the suit was based. The defendant denied absolutely that said mortgage was subscribed, signed, or executed by him.

Upon the trial the plaintiff introduced in evidence said alleged mortgage note. This instrument, as appears from a photostatic copy thereof set out in the bill of exceptions, purports to have been signed by Hugh Glenn and F. J. Glenn in the presence of G. L. Bell and W. H. Gregg, whose names appear on said document as the attesting witnesses thereto, both of whom were present in court and testified upon the trial of said case. Said W. H. Gregg testified as a witness for plaintiff, and said G. L. Bell testified as a witness for the defendant.

Section 8033, Code of Alabama 1923, declares that a mortgage of personal property is not valid unless made in writing and subscribed by the mortgagor.

■ The burden was upon the plaintiff to prove, among other things, that he had a mortgage note upon the property sued for, and to successfully carry this burden it was necessary for him to prove that the defendant F. J. Glenn, in person, signed or executed the said mortgage note, or legally authorized another to sign the note for him, and without this proof, the plaintiff was not entitled to recover. Mackey et al. v. Hall Auto Co., 27 Ala.App. 557, 176 So. 318; Ryall v. Pearsall Bros., 148 Ala. 668, 41 So. 673; French Piano Co. v. Bradley, 138 Ala. 177, 35 So. 44.

The plaintiff, upon the trial, introduced three witnesses, W. H. Gregg, Monroe Parker and John Gordon, who were the agents, servants or employees of the plaintiff in the delivery of a wagon and two tons of fertilizer to F. J. Glenn and Hugh Glenn, the purchase price of which merchandise constituted the true consideration of the mortgage note. Each of said named persons claimed a knowledge of the *signing* of said mortgage note by F. J. Glenn, the defendant, and each of whom, separately and severally, testified that on April 15, 1936, they were each at the home of F. J. Glenn, in and about the business of the plaintiff, and that each of them saw the said F. J. Glenn sign said mortgage note in person, by subscribing his name thereto with his own hand, and that G. L. Bell, and W. H. Gregg each, then and there, wrote or subscribed, their names, each respectively, on said mortgage as attesting witnesses to said signing or execution, of said instrument.

In addition to testifying as to the signing of said mortgage note by said F. J. Glenn, defendant, each one of said three named witnesses also testified that at the time said mortgage note was signed by said F. J. Glenn there were present the following named persons: F. J. Glenn, W. H. Gregg, Monroe Parker, John Gordon, G.

L. Bell and his son Gordon Bell. Each of the said three named witnesses also testified that Hugh Glenn, whose name is subscribed to said mortgage, as one of the makers thereof, was not present when said mortgage was signed. W. H. Gregg and Monroe Parker, each testified that Hugh Glenn's name was *signed* to said mortgage by F. J. Glenn, the defendant, who, as said two witnesses testified, claimed to have authority to sign Hugh Glenn's name to said document. John Gordon testified on direct examination that he saw F. J. Glenn *sign* his own name or Hugh Glenn's name to the mortgage. To be exact, said John Gordon testified: "I do not know whether he (F. J. Glenn) signed his name or Hugh's name. He was supposed to sign his name. I would not say positively whose name he was putting down. Hugh Glenn wasn't there but Mr. Glenn said that it was all right for him to go ahead and fix it up and said that Hugh told him to. Could not be positive about a small boy signing Hugh's name."

W. H. Gregg and Monroe Parker each further testified that F. J. Glenn *signed* the name of Hugh Glenn to the mortgage and W. H. Gregg also testified that F. J. Glenn "tried to get the little boy (Gordon Bell) to write it (the name of Hugh Glenn)." Said Gregg further testified that: "J. L. Bell was there. He wrote his name as a witness, I asked him to witness it. That was in the presence of F. J. Glenn. F. J. Glenn heard me ask Bell to witness it. He made no objection and Bell then wrote his name as a witness."

The above and foregoing was in substance all of the testimony offered by the plaintiff in proof of the actual signing or execution of said mortgage and tends to prove, if believed, that the defendant, in person, *signed* his own name to said document in the presence of the two subscribing witnesses. Plaintiff offered no evidence showing, or tending to show, that F. J. Glenn, defendant, authorized, directed or empowered any person to sign his (F. J. Glenn's) name to said mortgage note.

The defendant F. J. Glenn testified that the name "F. J. Glenn" signed to said mortgage note was not his signature; that he did not sign said mortgage note and did not authorize any one to sign his name to said document, and that he did not sign the name of Hugh Glenn thereto.

G. L. Bell, one of the attesting witnesses to the mortgage note, testified that F. J. Glenn did not sign said mortgage; that F. J. Glenn did not write on the said mortgage at all; that F. J. Glenn gave Gordon Bell, son of G. L. Bell, permission to sign Hugh Glenn's name to said document and that Gordon Bell started to sign Hugh Glenn's name thereto when W. H. Gregg took said instrument from said Gordon Bell and erased what Gordon had written, and signed Hugh Glenn's name to it himself, and asked witness to attest it and said that was Hugh Glenn's paper on guano and a wagon; that witness saw W. H. Gregg sign Hugh Glenn's name to the mortgage and was looking at him when he did it, and that witness signed his own name on the mortgage note as a witness; that said document was Hugh Glenn's paper, and that F. J. Glenn's name was not on said mortgage when witness signed his own name thereon.

Gordon Bell testified that he was present and that he did not see F. J. Glenn sign anything; that W. H. Gregg signed Hugh Glenn's name to the mortgage note. On cross-examination this witness testified that he did not remember now that F. J. Glenn signed the paper.

Defendant also offered Louis Schulhofer, a handwriting expert of 30 years experience, who testified that the signatures of Hugh Glenn and of F. J. Glenn to said mortgage note were written by one and the same person, and that the signature of F. J. Glenn to said mortgage note was not in the same handwriting as were the admitted genuine signature of said F. J. Glenn to other paper writings which had been examined by the witness.

The above and foregoing was all the testimony offered by the defendant relating directly to the signature of F. J. Glenn to said mortgage, and as to whether or not he subscribed, signed or executed said document. It must be conceded that the signing, or execution of said mortgage by said F. J. Glenn, was, under all of the testimony introduced upon the trial of said case, a question to be decided by the jury. The crucial inquiry, under all the evidence, was, did F. J. Glenn, defendant, sign his name to the mortgage note upon which this suit was founded? The evidence for plaintiff tended to show that said F. J. Glenn signed the mortgage note. The testimony for the defendant tended to show that he did not sign it. In the general oral charge

of the court, he charged the jury as follows: "The defendant claims, gentlemen, that he did not sign the note. It is undisputed that this cotton, which is the subject of this suit, was grown by the defendant, F. J. Glenn, in 1936, so that the only question to be decided by you, in determining whether the plaintiff is entitled to the cotton, or the defendant is entitled to the cotton, is whether or not the defendant, F. J. Glenn, signed this mortgage note. If he signed it, the plaintiff is entitled to recover. If he didn't sign it, the defendant is entitled to a verdict."

The trial court, at the request of plaintiff, gave the following special written charge: "4. If you are reasonably satisfied from the evidence that the defendant, F. J. Glenn, executed that certain chattel mortgage recorded in Vol. 2720 page 402 in the office of the judge of probate of Jefferson County, Alabama, then your verdict must be for the plaintiff."

The chattel mortgage specified in said written charge is the same document mentioned in the above quoted portion of the general oral charge of the court.

The trial court, at the request of the defendant, also gave the following special written charge: "1. The court charges the jury if you are reasonably satisfied from the evidence in this case that the defendant F. J. Glenn did not sign the mortgage in question in this case, you cannot find for the plaintiff."

It is to be observed that in the trial court's oral charge, and in defendant's special written charge 1, the express words used in regard to the making of the mortgage are, did F. J. Glenn *"sign"* said mortgage note, while in special written charge 4, supra, given at request of plaintiff, said words are, did F. J. Glenn *"execute"* said mortgage. It is evident that as used in said charges the words "sign" and "execute" are synonymous.

In the case of Barksdale v. Bullington, 194 Ala. 624, 69 So. 891, 893, where the question dealt with was the due and legal execution or signing of a mortgage the Supreme Court said: "A person is said to 'sign' a document when he writes or marks thereon something in evidence or token of his intention to be bound by its contents. Any mark is sufficient if it shows an intention to be bound by the document."

The evidence in this case could only establish to the reasonable satisfaction of the jury either that F. J. Glenn *did sign* said mortgage note, or, that he *did not sign* said mortgage note by subscribing his name thereto with his own hand in the presence of two attesting witnesses.

During the examination of Hugh Glenn, whose name appears to have been subscribed by some one to the mortgage note here in question, and who testified as a witness for defendant, the defendant propounded to him the following question: "Q. Did your father (meaning F. J. Glenn) authorize you or any one in your presence to sign his name to the mortgage?" The plaintiff objected to said question, the objection was overruled, and plaintiff excepted. This action of the trial court is assigned as error. The argument made by appellant in support of said assignment is, that said question called for a conclusion of the witness, and invaded the province of the jury. It is the opinion of this court that there is no merit in the objection noted. The word "authorize" means to endow with authority, or grant authority to, National Surety Co. v. City of Huntsville, 192 Ala. 82, 68 So. 373; and so understood it is obvious that said question was a proper one, and called for competent, material and legal testimony, with reference to a vital question in this case.

In the general oral charge to the jury the court stated, that in the event the jury found for the defendant, it would be necessary for the jury to assess the defendant's damages for the detention of the cotton and the cotton seed involved in the suit, from October 6, 1936, the date said property was taken from defendant, by the Sheriff, up to the date of trial; that the proper method to be employed in arriving at damages for detention, would be to find, first, the value of said cotton, and cotton seed, on October 6, 1936, and to this sum, add interest thereon at the rate of 6 per cent per annum from October 6, 1936, to date of trial; and then, second, find the value of said cotton and cotton seed on the date of the trial, and to then deduct this last mentioned sum from the value of said cotton and cotton seed on October 6, 1936, plus interest thereon as above stated, and the difference between the two sums would be the amount of defendant's damages for detention.

The plaintiff excepted to said portion of the oral charge and assigns the same as error (assignment 16) and insists that in detinue the measure of damages is

the value of the use of the chattel while wrongfully detained *exclusive of interest* and damages for depreciation, and cites the cases of Ex parte Allen, 166 Ala. 111, 52 So. 44; and Louisville & N. R. R. Co. v. James, 204 Ala. 604, 86 So. 906. This court is of the opinion that neither of the cited cases supports appellant's contention in the case at bar. In the case of Ex parte Allen, supra, where the property sued for was a horse, the Supreme Court declared that the measure of damages in the action of detinue is the value of the hire or use of the chattel during the period of wrongful detention. 3 Mayfield Dig. p. 61, 62. Interest on the value of the hire or use is not an element of the damages in such cases. Fralick v. Presley, 29 Ala. 457, 65 Am.Dec. 413. Ordinary wear and tear of the chattel is included in the rent or hire thereof. Hence damages for wear and tear cannot be added to those awarded for rent or hire in such action. White v. Sheffield & T. St. R. Co., 90 Ala. 253, 7 So. 910. It is to be observed that the horse sued for in the Allen case had a rental value for its hire or use during the detention, which was capable of being measured in money, and under our decisions the value of this hire or use was the proper measure of damages for its detention.

In the case of Louisville & N. R. R. Co. v. James, supra, [204 Ala. 604, 86 So. 907], wherein was involved a lot of household furniture, the court declared that the measure of damages in an action in detinue is —"the value of the use or hire thereof during the period of wrongful detention, without interest or damages for deterioration in value from ordinary wear and tear. * * * But deterioration in value occasioned by the wrongdoer, through neglect, abuse, or nonuse, is an element of damages recoverable in addition to the value of the use or hire of the property."

In addition to the foregoing, we are of the opinion that if the trial court erred in charging the jury that interest might be added to the value of the cotton, and cotton seed, as found by the jury to be on the date of its seizure by the Sheriff under the writ of detinue, said error was without substantial injury to plaintiff for the following reason; the defendant testified that this cotton was graded strict middling ⅞ inch staple, and was worth 13½ cents per pound, at the time it was seized by the Sheriff; the evidence shows without dispute that the two bales of cotton weighed in the aggregate 1,015 pounds, which at 13½ cents per pound amounted to $147.02. The value of this cotton seed at the time of the trial, according to the testimony of plaintiff, was 8 cents per pound, or $81.20. The difference in the value of the cotton at the time it was seized by the Sheriff, and at the time of the trial, is $65.82. This difference in value is without any interest whatever. The jury assessed defendant's damages for detention at $65.06 or 75 cents less than the difference in value of the cotton when seized and when the case was tried.

It is true that plaintiff testified that "on October 6, 1936, cotton was worth about 10½ or 11 cents," and this on a basis of middling, but the jury, while not required to take the highest price per pound, shown by the testimony, were nevertheless authorized so to do if they saw fit.

The plaintiff requested the two following special written charges:

"5. If you are reasonably satisfied from the evidence that F. J. Glenn signed or authorized his signature to be affixed to that certain chattel mortgage recorded in Vol. 2720 page 402 in the office of the Judge of Probate of Jefferson County, Alabama, then your verdict must be for the plaintiff."

"7. If you are reasonably satisfied from the evidence that the defendant, F. J. Glenn, signed or authorized his signature to be affixed to that certain chattel mortgage recorded in the office of the probate judge of Jefferson County, Alabama, in Vol. 2720 page 402 and if you are further reasonably satisfied from the evidence that the debt secured by said mortgage has not been paid, then your verdict must be for the plaintiff."

The trial court refused to give each of said charges and the action of the court in this connection is made the basis of assignments of error 21 and 22.

It is our opinion that the court did not err in refusing to give each of said charges. The mortgage introduced in evidence shows on its face that it was due and payable "On or before October 1, 1936." The writ of detinue, under which the cotton and cotton seed were seized, shows on its face that it was issued on October 6, 1936, and that it was duly and legally executed on that date, which of course shows that the debt was due on October 6, 1936, if due at all.

There is not one scintilla of evidence set out in the bill of exceptions that shows, or tends to show, either directly, or indirectly, or any reasonable inference therefrom, that said mortgage note was executed by J. F. Glenn, the defendant, in any way or manner other than by personally signing or subscribing his own name to said document. The trial court, under the evidence in this case, correctly instructed the jury in the general oral charge by saying: "The only question to be decided by you, in determining whether the plaintiff is entitled to the cotton, or the defendant is entitled to the cotton is whether or not the defendant, F. J. Glenn, signed this mortgage note. If he signed it, the plaintiff is entitled to recover," which instruction was, in substance, repeated to the jury in plaintiff's special written charge numbered 1, and given by the trial court to the jury at the instance and request of plaintiff.

 After the final judgment in this case was pronounced by the court, plaintiff on June 24, 1938, presented to the trial judge, a motion for a new trial, containing 28 alleged grounds, or reasons why the verdict of the jury and final judgment of the court, pronounced thereon, should be set aside, and a new trial granted. We have carefully examined said motion and each ground thereof. There is no evidence whatever, in the entire record of any improper conduct between Hugh Glenn, son of the defendant, and any member of the jury, drawn and empannelled, to try this case in the court below, as alleged in paragraph numbered 27 of said motion, and, of course, for this reason said motion cannot be considered upon this specific allegation.

After a due and attentive consideration of said motion, this court is not convinced that the verdict was contrary to either the evidence, the weight of the evidence, the great preponderance of the evidence, the law, or to the charge of the trial court, and it is very clear that plaintiff was not entitled under the evidence to a directed verdict, as requested. The other questions presented by plaintiff's motion for a new trial, not insisted upon under appellant's assignments of error, are obviously without merit, while those properly presented for consideration under Rule of Practice 10 have been hereinabove adjudged adversely to appellant. It is the opinion and judgment of this court therefore, that the trial court did not err in overruling and denying the motion for a new trial.

As stated, it is our opinion that the vital issue, upon the trial of this case, was the execution, vel non, of the mortgage note by the defendant. The question was very clearly one for the jury to determine upon the entire evidence introduced upon the trial of the case, and this question was decided by the jury in favor of the defendant, and against the plaintiff.

This court is of the opinion, and therefore considers and adjudges, that the trial of this case in the court below was free from any substantial error, and that the judgment appealed from must be, and is, affirmed.

Affirmed.